**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| JOE COMES and RILEY PAINT, INC., an Iowa corporation, | : | No. CV 05-562 |
| | : | |
| Plaintiffs, | : | **AFFIDAVIT OF** |
| | : | **ROXANNE BARTON CONLIN** |
| v. | : | |
| | : | |
| MICROSOFT CORPORATION, a Washington Corporation, | : | |
| | : | |
| Defendant. | : | |

Roxanne Barton Conlin, being first duly sworn, deposes and says as follows:

1.      I am a shareholder of Roxanne Conlin & Associates, P.C., and Plaintiffs' co-lead counsel in the above-captioned litigation.   I submit this affidavit in support of Plaintiffs' Motion for Remand.

2.      The exhibits attached to this affidavit are true and accurate copies of the following documents:

a.      Letter from Brent B. Green to the Hon. Ronald E. Longstaff dated October 17, 2005 (Exhibit 1).

b.      Excerpts from Microsoft's Responses to Plaintiffs' Second Set of Requests for Production of Documents (Exhibit 2).

c.      Excerpts from Microsoft's Memorandum in Opposition to Plaintiffs' Motion to Compel Discovery (Exhibit 3).

d.      Excerpts from September 30, 2003 deposition of Paul Regan, *Friedman v. Microsoft Corp.*, CV2000-00722 (AZ Super. Ct.) (Exhibit 4).

e.      *Gordon v. Microsoft Corp.*, Civ. No. 00-5994, PX 4221 (Exhibit 5).

f.      Excerpts from Plaintiffs' Second Set of Requests for Production of Documents (Exhibit 6).

g.     Excerpts from Memorandum in Support of Plaintiffs' Motion to Compel Discovery (Exhibit 7).

h.     Excerpts from Reply in Support of Plaintiffs' Motion to Compel (Exhibit 8).

i.     Excerpts from Ruling on Plaintiffs' Motion to Compel Discovery, *Comes v. Microsoft Corp.*, CL82311 (Iowa Dist. Ct. July 22, 2005) (Exhibit 9).

j.     Excerpts from Petition, *Comes v. Microsoft Corp.*, CL82311 (Dist. Ct. Polk Co. Feb. 18, 2000) (Exhibit 10).

3.     I swear and certify under penalty of perjury and pursuant to the laws of the State of Iowa that the preceding is true and correct.

This Affidavit was executed on the 18 day of October, 2005.

/s/ Roxanne Barton Conlin
Roxanne Barton Conlin

LAW OFFICES

DUNCAN, GREEN, BROWN & LANGENESS

A PROFESSIONAL CORPORATION
380 CAPITAL SQUARE
400 LOCUST STREET
DES MOINES, IA  50309-2363
FACSIMILE (515) 288-6448
TELEPHONE (515) 288-6440

H.R. "RANDY" DUNCAN
BRENT B. "CHRIS" GREEN*
GREGORY R. BROWN
JAMES B. LANGENESS
R. MATHIESON DUNCAN+*
MARICLARE THINNES CULVER
BRADLEY C. OBERMEIER
MARTIN J. KENWORTHY·
CHRISTINE B. LONG~
MICHELE M. RAMSEY=
KIRK W. BAINBRIDGE■
LYNN M. GAUMER■+

ALSO ADMITTED IN:
*NEW YORK
+MISSOURI
*DISTRICT OF COLUMBIA
■ILLINOIS
+SOUTH DAKOTA
·OHIO
~ARIZONA

Writer's Direct E-Mail:
BGREEN@DUNCANGREENLAW.COM

October 17, 2005

**HAND-DELIVERED**

Hon. Ronald E. Longstaff
Chief Judge
U.S. District Court Southern District of Iowa
115 U.S. Courthouse
123 E. Walnut Street
Des Moines, IA 50309

RE: COMES V. MICROSOFT CORP., LAW NO. CV 05-562

Dear Judge Longstaff:

I am counsel for defendant Microsoft and write in response to Roxanne Conlin's October 14 letter in which she requests an "emergency briefing schedule" on a motion to remand that she has not yet filed. There is no "emergency" here, and plaintiffs offer no reason for thinking that any "emergency" exists other than their prediction that they will win the yet-to-be-made motion. In fact, this action has been pending for more than five years, largely as a consequence of plaintiffs' repeated expansions of their claims and, on stipulation of the parties, the trial date scheduled by the state court is in September 2006, almost a year away.

Microsoft removed this case because plaintiffs' proposed Fourth Amended Petition, filed last month, expressly pleaded violations of federal law. The Fourth Amended Petition alleges that Microsoft "violated Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Securities Exchange Act and Rules 126-20, 13a-1 and 13a-13 promulgated thereunder." The petition and motion to amend also incorporate claims of infringement of patents. These allegations create three separate grounds for removal: (1) they assert a claim for violation of federal securities and patent law under Fed. R. Civ. P. 8; (2) the federal claims are necessary elements of state-law antitrust and spoliation claims plaintiffs have made, *see Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 125 S. Ct. 2363, 2368 (2005); and (3) the allegations raise new claims in this case that are subject to removal under the Class Action Fairness Act of 2005.

Even if plaintiffs' letter is treated as a motion to expedite, Microsoft's motion for a stay of proceedings is logically and temporally prior to plaintiffs' motion, and should be addressed first. Microsoft's stay motion, filed October 13, 2005, seeks a brief stay of proceedings pending

**EXHIBIT 1**

10/17/2005
Page 2

transfer of this case to the District of Maryland under the multidistrict litigation statute. More than 100 cases like this one have been transferred to the Hon. J. Frederick Motz in Baltimore, and Judge Motz has ruled on numerous remand motions in those cases. (See Attachment A). This Court need not familiarize itself with this action when it is about to be transferred to the MDL court. Indeed, the patent-law allegations to which I refer in the prior paragraph were the subject of an action that Judge Motz handled from 2002 to April 2005, when it was settled and dismissed with prejudice. *Burst.com, Inc. v. Microsoft Corp.*, MDL 1332 (D. Md.).

In any event, if plaintiffs seek an expedited schedule, they should do so in accordance with normal procedures.

Respectfully submitted,

*Chris Green*

Brent B. Green

BBG/mm
Enclosures
cc:    Roxanne Conlin (via hand-delivery)
       Ed Remsburg (via facsimile)
       David Tulchin (via facsimile)
       (all with enclosures)

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | | |
|---|---|---|
| JOE COMES, JEFF C. JENNISON and RILEY PAINT, INC., an Iowa corporation, | : : : | No. CL82311 |
| Plaintiffs, | : : | |
| v. | : : | |
| MICROSOFT CORPORATION, a Washington corporation, | : : : | |
| Defendant. | : : | |

### DEFENDANT MICROSOFT CORPORATION'S RESPONSES TO PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 1.513 of the Iowa Rules of Civil Procedure, defendant Microsoft Corporation ("Microsoft") hereby responds to Plaintiffs' Second Set of Requests for Production of Documents, as modified by the letter of February 28, 2005, from Richard M. Hagstrom to Edward Remsburg ("Plaintiffs' Requests").

### GENERAL OBJECTIONS

1.      Microsoft objects to Plaintiffs' Requests to the extent that they seek discovery beyond the limitations set by the Court in its Orders of January 23, 2003 and December 17, 2004. In its Pre-Trial Procedures Order No. 1 of January 23, 2003 ("*Comes* Pre-trial Procedures Order No. 1"), the Court directed that discovery in this proceeding be coordinated with discovery already taken and that may be taken in the related federal and state proceedings.  In its December 17, 2004 Order Denying Plaintiffs' Motion to Compel Discovery, this Court held that discovery "must take account of the very substantial amounts of discovery available to the parties." December 17, 2004 Order at ¶ 10.  Applying this principle, the Court held that,

**EXHIBIT 2**

be permitted only upon a showing of particularized good cause." December 17, 2004 Order at ¶ 10. Plaintiffs have made no such showing of particularized good cause here.

Microsoft further objects to this request to the extent it calls for production of previously produced documents in a form different from the form in which they were previously produced.

In addition, in producing documents in the MDL proceeding and in the related state court actions, Microsoft relied on the assurances of confidentiality provided by MDL Pretrial Order No. 1, which specified that such documents would be shared with state court plaintiffs provided that, *inter alia*, "a protective order no less restrictive than that entered in this case has been entered in the [state] action." Microsoft objects to re-producing any internal documents designated Confidential or Highly Confidential in the event the Stipulated Protective Order is modified in response to plaintiffs' pending motion to modify the protective order, dated July 28, 2004.

## DOCUMENT REQUEST NO. 63

All documents produced by Microsoft or to Microsoft (including any produced by non-parties) in any of the following matters: *Be Inc.* v. *Microsoft Corp.*, U.S.D.C. (N.D. Cal.) Case No. 02837MEJ; *Burst Corp.* v. *Microsoft Corp.*, U.S. D.C. (N.D. Cal.) Case No. 02-cv-2952; *Microsoft Corp.* v. *Lindows.com*, U.S.D.C. (W.D. Wash.) Case No. C01-2115C; *Netscape* v. *Microsoft Corp.*, U.S.D.C. (D.D.C.) Case No. 1:02cv97; *RealNetworks, Inc.* v. *Microsoft Corp.*, No. C 03-5717 (N.D. Cal.); *Sun Microsystems, Inc.* v. *Microsoft Corp.*, U.S.D.C. (N.D. Cal.) Case No. C-02-01150 PVT. All documents should be produced in electronic form (single page TIFF images with cross references to bates numbers), to the extent available. Furthermore, all documents produced in response to this request should indicate the specific request(s) for production from the aforementioned action(s) to which they were responsive.

**<u>RESPONSE:</u>**

Microsoft incorporates its general objections and objections to definitions and instructions as if fully stated herein. Microsoft further objects to this Request as duplicative, unduly burdensome, and overbroad, and on the ground that it seeks documents that are irrelevant to the claims and issues contained in plaintiffs' Third Amended Complaint. This Request calls for the production of documents from actions brought by various competitors of Microsoft (the "Competitor Cases") that raise issues that were amply covered by discovery in the MDL proceeding as well as issues not raised in the MDL proceeding or the Third Amended Petition in this case.

Pursuant to this Court's December 17, 2004 Order Denying Plaintiffs' Motion to Compel Discovery, aside from updating of certain database production, further discovery by plaintiffs in this action is limited to Iowa-specific issues. "[O]ther discovery will be permitted only upon a showing of particularized good cause." December 17, 2004 Order at ¶ 10. No discovery beyond the allegations of the Third Amended Petition is permitted. *Id.* ¶ 20. Plaintiffs have made no such showing of particularized good cause here.

Microsoft further objects to this Request to the extent it requires Microsoft to identify the prior requests to which the previously produced documents are responsive. This Court has held that "[i]t is not Microsoft's obligation to categorize the documents previously produced in response to plaintiffs' current requests." December 17, 2004 Order at ¶ 15. It is likewise not Microsoft's obligation to categorize the millions of pages of documents previously produced in accordance with the requests for production made in those earlier cases. Microsoft further objects to this request to the extent it calls for production of previously produced documents in a form different from the form in which they were previously produced.

Microsoft further objects to producing any internal documents designated

Confidential or Highly Confidential in the event the Stipulated Protective Order is modified in

response to plaintiffs' pending motion to modify the protective order, dated July 28, 2004.

## DOCUMENT REQUEST NO. 64

All trial and hearing transcripts, deposition transcripts (including exhibits), and videotapes of any of these from any of the matters listed in Document Request No. 63. All transcripts and exhibits should be produced in electronic format, to the extent available.

## RESPONSE:

See Response to Request No. 63.

## DOCUMENT REQUEST NO. 65

All documents produced by Microsoft or to Microsoft (including any produced by non-parties) in the Commission of the European Communities proceedings under Article 82 of the EC Treaty, Case COMP/C-3/37.792 Microsoft. All documents should be produced in electronic form (single page TIFF images with cross references to bates numbers), to the extent available.

## RESPONSE:

Microsoft incorporates its general objections and objections to definitions and

instructions as if fully stated herein. Microsoft further objects to this Request as irrelevant to the

claims and issues contained within plaintiffs' Third Amended Complaint. The Commission of

the European Communities proceedings were commenced by a complaint filed by Sun

Microsystems, Inc. on December 10, 1998 that raised allegations that Microsoft has refused to

disclose to competitors the technology required to allow interoperability of work group server

operating systems supplied by Microsoft competitors with the Windows personal computer

("client") operating system. Microsoft was also accused of conditioning the availability of the

**DOCUMENT REQUEST NO. 67**

All pleadings or filings from the matter listed in Document Request No. 65.

**RESPONSE:**

See Response to Request No. 65.

**DOCUMENT REQUEST NO. 68**

All plaintiff and defendant trial exhibits from any action listed in Document Requests No. 61 and 63. All exhibits should be produced in electronic form (single page TIFF images with cross references to bates numbers) to the extent available.

**RESPONSE:**

See Responses to Request Nos. 62 and 63.

Dated: March 9, 2005

*Of Counsel*

Charles B. Casper
MONTGOMERY, MCCRACKEN,
  WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA 19109
Telephone: (215) 772-1500

Thomas W. Burt
Richard Wallis
Steven J. Aeschbacher
MICROSOFT CORPORATION
One Microsoft Way
Redmond, WA 98052
Telephone: (425) 936-8080

*Edward W. Remsburg/prm*

Edward W. Remsburg (PK0004619)
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309
Telephone: (515) 243-7611

David B. Tulchin
Joseph E. Neuhaus
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000

*Attorneys for Microsoft Corporation*

-10-

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| JOE COMES, JEFF C. JENNISON and RILEY PAINT, INC., an Iowa corporation, | : No. CL82311<br>:<br>:<br>: |
| Plaintiffs, | :<br>: |
| v. | :<br>: |
| MICROSOFT CORPORATION, a Washington corporation, | :<br>:<br>: |
| Defendant. | : |

## MICROSOFT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY

Edward W. Remsburg (PK0004619)
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa  50309
Telephone:  (515) 243-7611

David B. Tulchin
Joseph E. Neuhaus
Sharon L. Nelles
Ryan C. Williams
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000
*Attorneys for Microsoft Corporation*
*(additional counsel listed on signature page)*

April 21, 2005

**EXHIBIT 3**

I.      **Plaintiffs' Requests for Documents Produced in Other Proceedings in Which Microsoft Was a Party.**

Plaintiffs seek documents produced by any party, and all deposition, hearing and trial transcripts, from (a) five actions initiated by competitors of Microsoft, (b) a trademark infringement action initiated by Microsoft, and (c) a regulatory proceeding conducted by the European Union.  Microsoft estimates that these requests seek production of more than 12 million pages of documents not previously produced in the consumer overcharge actions against Microsoft.

As with the discovery requests at issue in plaintiffs' prior motion to compel, plaintiffs' requests for documents from other actions and proceedings in which Microsoft was a party seek information that is either:  (1) cumulative of the millions of pages of discovery already available to plaintiffs in this action; or (2) far outside the scope of plaintiffs' Third Amended Petition.  For the most part, these cases concern different products and different markets than those at issue in the Third Amended Petition, or conduct occurring years after the conduct alleged therein.  *See* Protective Order Mem. at 15-17.  Judge Reis considered a similar -- albeit considerably more limited -- effort to expand discovery beyond the Third Amended Petition and denied it. She directed that any further discovery in this case must be "grounded in . . . allegations of specific fact in the Third Amended Petition[.]"  December 2004 Order, Remsburg Aff. Ex. A, at 15.  The discovery here simply ignores, and cannot meet, that standard.  *See* Protective Order Mem. at 20-24.

Plaintiffs argue that there are some allegations in some of the parallel proceedings that are "relevant" to the allegations of the Third Amended Petition.  Pl.

-4-

Mem. at 4. But plaintiffs have made no attempt to show why the massive amounts of existing discovery is insufficient or to show "particularized good cause" for reopening discovery of those issues. *See* Protective Order Mem. at 22-24. Indeed, plaintiffs' lawyers, Roxanne Conlin and Richard Hagstrom, proceeded to trial in a consumer class action against Microsoft on the same record now available to plaintiffs in this action based on allegations substantially identical to those contained in plaintiffs' Third Amended Petition. *See* Second Amended Complaint, *Gordon* v. *Microsoft Corp.*, No. 00-5994 (Minn. Dist. Ct. filed Oct. 22, 2002) (attached as Exhibit C to the Remsburg Aff.).

Moreover, many of the allegations in the Third Amended Petition to which plaintiffs have attempted to connect these seven proceedings relate to issues on which plaintiffs have obtained collateral estoppel treatment. For example, plaintiffs contend that five of these proceedings -- the *Netscape, Sun, Burst.com*, and *RealNetworks* actions and the EU proceeding -- are "relevant" because they involve or relate to Netscape's web browser or Sun's Java software, both of which are the subject of allegations in the Third Amended Petition. *See* Pl. Mem. at 5-8. But the Netscape and Java allegations in plaintiffs' Third Amended Petition are comprehensively covered by findings to which collateral estoppel has been applied and which Microsoft is therefore precluded from challenging. *Compare* Third Am. Pet. ¶¶ 137-78 (alleging conduct directed at Netscape) *with United States* v. *Microsoft Corp.*, 84 F. Supp. 2d at 28-34, 43-105 (¶¶ 68-72, 79-92, 133-35, 143-70, 173-98, 202-10, 212-23, 228-45, 253-58, 261-94, 296-310, 337-78); *compare* Third Am. Pet. ¶¶ 179-82 (alleging conduct directed at Sun's Java software)

-5-

*with* 84 F. Supp. 2d at 29-30, 105-10 (¶¶ 73-77, 386-407); *see also* Protective Order
Mem. at 17-18 and 26-29.

Because the Court's collateral estoppel ruling means that "there is no
further fact-finding function to be performed" on any of the issues to which estoppel
applies, *Colvin* v. *Story County Bd. of Review*, 653 N.W.2d 345, 349 (Iowa 2002),
plaintiffs cannot establish "particularized good cause" for discovery on those issues. *See*
Protective Order Mem. at 26-29; *see also United States* v. *Karlen*, 645 F.2d 635, 641-42
(8th Cir. 1981) (affirming denial of motion to compel where apparent purpose of
discovery request was to allow plaintiff to relitigate issue subject to collateral estoppel).

In light of the cumulative and irrelevant nature of these requests, and as
more fully discussed in the Protective Order Mem. at 15-18, 21-29, Microsoft should not
be compelled to produce the millions of pages of documents that plaintiffs request.

## II.  Plaintiffs' Requests for Supposedly "Missing" Pages From Prior Productions

Plaintiffs seek an Order compelling Microsoft to reassemble certain
documents, from which, in plaintiffs' view, "pages appear to be missing or redacted."
Plaintiffs' Mem. at 8. As Microsoft explained to plaintiffs in March 2005, before they
filed their present motion, the documents they have identified contained no missing
pages. March 9, 2005 Letter from Joseph Neuhaus to Roxanne Conlin, at 2 (attached as
Exhibit C to the Affidavit of Roxanne Barton Conlin, sworn to March 28, 2005 ("Conlin
Aff.")). These documents were produced to plaintiffs in exactly the form they were
produced to the plaintiffs in earlier proceedings who originally requested these

documents.[4] The supposedly "omitted" pages from the e-mail strings to which plaintiffs refer relate to non-responsive e-mails that were printed out on the same page as e-mails responsive to the original discovery requests and that were not redacted prior to production. *Id.*

There is thus no basis for plaintiffs to insist that Microsoft attempt to locate and re-review the underlying e-mail to see if any additional pages are found to be of interest.[5] More generally, there is no reason to re-open discovery on these documents, which have been the subject of review by numerous lawyers over the last decade and whose authors have often been deposed or examined at trial. Plaintiffs have not even attempted to establish "particularized good cause" for this discovery.

## III.   Plaintiffs' Request That Microsoft Produce Expert Reports From the California and MDL Actions

Plaintiffs have requested that Microsoft produce certain reports of Microsoft experts in the MDL and California cases, and transcripts of their depositions in those cases. Microsoft initially agreed in July 2004 to produce such materials subject to the protective order in this action. These materials had been produced under protective

---

[4] With one exception (*see* note 5 *infra*), the documents identified by plaintiffs were complete copies of documents that Microsoft had produced in the MDL and California proceedings between July 2000 and July 2002 in response to requests for production of discovery produced in the mid-1990's in various government investigations of Microsoft and in an action brought by a Microsoft competitor. *See* Protective Order Mem. at 24-25.

[5] Indeed, as Microsoft has previously explained to plaintiffs, Conlin Aff. Ex. C, at 2, one of the documents at issue in their present motion -- which is attached as Exhibit Q to the Remsburg Aff. -- does not on its face appear to have any "missing" pages; it appears that the pages are simply out of order. Plaintiffs have now moved to compel Microsoft to "complete" this document even though they possess all of its pages.

## CONCLUSION

Plaintiffs' motion to compel discovery from Microsoft should be denied.

Dated: April 21, 2005

Respectfully submitted,

*Of Counsel:*

By: _Ed Remsburg_
   Edward W. Remsburg (PK0004619)

Charles B. Casper
MONTGOMERY, McCRACKEN,
   WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, Pennsylvania  19109
(215) 772-1500

AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa  50309
(515) 243-7611

Thomas W. Burt
Richard J. Wallis
Steven J. Aeschbacher
MICROSOFT CORPORATION
One Microsoft Way
Redmond, Washington  98052
(425) 936-8080

David B. Tulchin
Joseph E. Neuhaus
Sharon L. Nelles
Ryan C. Williams
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

*Attorneys for Microsoft Corporation*

PAUL REGAN

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

--oOo--

CHARLES I. FRIEDMAN, P.C., an )
Arizona corporation, and THE )
POWER P.E.O., INC., an Arizona )
Corporation, on behalf of )
themselves and all others )
similarly situated, )
)
                Plaintiffs, )
)
        vs. ) Case No. CV2000-000722
) Case No. CV2000-005872
MICROSOFT CORPORATION, a )
Washington corporation, )  **CERTIFIED COPY**
)
                Defendant. )
————————————————————)
JAKE LUCERO, Individually and )
On Behalf of All Others )
Similarly Situated, )
)
                Plaintiffs, )
)
        vs. )
)
MICROSOFT CORPORATION, )
)
                Defendant. )
————————————————————)

DEPOSITION OF PAUL REGAN
September 30, 2003

REPORTED BY:  SARAH LUCIA BRANN, CSR 3887  (01-340173)

**EXHIBIT 4**


**LEGALINK**
A **WORDWAVE** COMPANY

**LegaLink San Francisco (415) 359-2040**
LegaLink San Francisco      tel (415) 359-2040    www.legalink.com
601 Van Ness Ave, Suite 2052   tel (800) 869-9132
San Francisco, CA 94102      fax (415) 359-2050

PAUL REGAN

1    included in the model.

2           MR. MATELIS:  Q.  Did you ever become aware

3    that there were entries in the Excel and Word product

4    units respecting revenues that were not determined in

5    accordance with GAAP?

6           MR. DOWD:  Objection.  Vague.

7           THE WITNESS:  Well, in reading the Laurence

8    comments as well as the SEC comments, it appears as if

9    there are entries within the product units which need to

10   be modified in order for the financial statements to be

11   presented in accordance with GAAP.  I touched on a few

12   earlier, for example, the coupons, to the extent coupons

13   are given to allow a customer to upgrade, or to the

14   extent that there is a long-term contract with respect

15   to Word which incorporates post-sale customer support.

16   Those modifications apparently are made at the corporate

17   level, not at the product unit level.  So, recognizing

18   all of the revenue at the product unit is not in

19   accordance with GAAP, and therefore you need to make

20   some entries at the top and take them down.  Those are

21   not made at the product level, so they are attempting to

22   deal with a non-GAAP condition at the product unit

23   level.

24          And then the SEC criticized some of those

25   entries, saying that the company did not have any

PAUL REGAN

1  documentation on a reasonable basis to make some of

2  those entries.

3          MR. MATELIS:  Q.  In addition to entries

4  relating to coupons, long-term contracts, and those

5  entries discussed in the SEC settlement decree, are

6  there any other non-GAAP entries that you became aware

7  of?

8          MR. DOWD:  Objection.  Vague.

9          THE WITNESS:  I don't know whether you in your

10 question incorporated OEM select revenues, accruals,

11 some of the channel reserves, but one would need to

12 address those also.

13         MR. HAGSTROM:  Joe, let us know when it's

14 convenient for a break.

15         MR. MATELIS:  Okay.  I only have five to ten

16 minutes left, so...

17     Q.  The OEM select accruals, what was inconsistent

18 with GAAP in Microsoft's treatment of those entries?

19     A.  Mr. Laurence explains that there is a need for

20 MAP-to-GAAP adjustments to consider OEM accruals.  He

21 provides a brief explanation of what they are.

22         I also recall the SEC's AAER addresses OEM

23 accruals also, and criticizes Microsoft for not having

24 appropriate basis to make those accruals, or at least

25 portions of those accruals.  So, the specifics of the

113

PAUL REGAN

1    MAP-to-GAAP adjustment with respect to OEM accrual, you

2    can find that specific in Mr. Laurence's report, both in

3    California and Minnesota, and the comments of the SEC

4    you can find in Tab 14 in my report binder.

5         Q.    Is there anything else that you became aware

6    of, where Microsoft had treated revenues or expenses in

7    a way that was inconsistent with GAAP?

8         A.    Well, I think all of the various adjustments

9    that are incorporated within Mr. Laurence's schedule to

10   his California report, and all of the MAP-to-GAAP

11   adjustments that are incorporated within my report

12   binder.  They are laid out on a variety of schedules.

13        Q.    Okay.  And by report binder, what do you mean?

14   Is that the document that I received yesterday?

15        A.    The one you won't let me look at.

16        Q.    I won't let you look at?  Is that the binder

17   you got yesterday, or is it something different?

18        A.    They are in there.  They are also, if you look

19   at Exhibit 1 -- it's faster to find it in my report

20   binder, because I have it tabbed and referenced.

21        Q.    For this purpose, you can pull it out.

22        A.    Well, I have found it in here.  If you look in

23   the Exhibit 1 there, listed in Exhibit C-8, pages one

24   and two, for Excel -- the document to go to to find all

25   of them is at C-13, pages one and two.  That lists all

114

PAUL REGAN

1    of the MAP-to-GAAP adjustments that are necessary,

2    according to Mr. Laurence.

3        Q.   Okay.  Did you become aware of any other

4    MAP-to-GAAP adjustments -- let me strike that.

5        Other than those entries indicated on Exhibit

6    C-13 to Regan Exhibit 1, are you aware of any other

7    revenues or expenses listed in Microsoft's product units

8    that were not made in conformity with GAAP?

9        A.   No.* These are the only ones I am aware of.

10        MR. MATELIS:  This is a good breaking point,

11    if you want.

12        (Recess taken from 2:38 to 2:47.)

13        MR. MATELIS:  Q.  I just had two follow-up

14    questions on the topic we were just discussing.  Is it

15    your opinion that the product unit P&Ls constructed

16    through your model are consistent with GAAP?

17        A.   Well, that's kind of a term of art, asking a

18    CPA on that.  And I am not professing to have done an

19    audit in accordance with generally accepted auditing

20    standards, and I am not professing to give an opinion

21    that these separate product unit P&Ls are in accordance

22    with GAAP, because I haven't done an examination in

23    accordance with generally accepted auditing standards,

24    which would mean you have got to go into the company,

25    and you have got all kinds of things you need to look at

Home | Previous Page



**PLAINTIFF'S EXHIBIT**
4221
Gordon v. Microsoft

## UNITED STATES OF AMERICA
## Before the
## SECURITIES AND EXCHANGE COMMISSION

**SECURITIES EXCHANGE ACT OF 1934**
**Release No. 46017 / June 3, 2002**

**ACCOUNTING AND AUDITING ENFORCEMENT**
**Release No. 1563 / June 3, 2002**

**ADMINISTRATIVE PROCEEDING**
**File No. 3-10789**

| | |
|---|---|
| In the Matter of | : ORDER INSTITUTING PUBLIC ADMINISTRATIVE |
| | : PROCEEDINGS PURSUANT TO SECTION 21C OF |
| MICROSOFT CORPORATION, | : THE SECURITIES EXCHANGE ACT OF 1934, |
| | : MAKING FINDINGS AND IMPOSING CEASE-AND- |
| Respondent. | : DESIST ORDER |

### I.

The Securities and Exchange Commission ("Commission") deems it appropriate that public administrative proceedings be, and hereby are, instituted pursuant to Section 21C of the Securities Exchange Act of 1934 (the "Exchange Act") to determine whether Microsoft Corporation ("Respondent") violated Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act and Rules 12b-20, 13a-1 and 13a-13 thereunder.

### II.

In anticipation of the institution of these administrative proceedings, Microsoft has submitted an Offer of Settlement ("Offer") that the Commission has determined to accept. Solely for the purposes of these proceedings, and for any other proceeding brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings set forth below, except as to jurisdiction of the Commission over it and over the subject matter of these proceedings, which Respondent admits, Respondent consents to the entry of this Order Instituting Public Administrative Proceedings Pursuant to Section 21C of the Securities Exchange Act of 1934, Making Findings and Imposing Cease-and-Desist Order (the "Order"). The Commission has determined that it is appropriate to accept the Offer and accordingly is issuing this Order.

**EXHIBIT 5**

## III.

Accordingly, IT IS HEREBY ORDERED, that administrative proceedings pursuant to Section 21C of the Exchange Act be, and they hereby are, instituted.

## IV.

## FINDINGS

On the basis of this Order and the Offer of Settlement submitted by Respondent, the Commission finds that:

### A. Respondent

**Microsoft Corporation** is a Washington corporation with its principal place of business in Redmond, Washington. Since its initial public offering in 1986, Microsoft's common stock has been registered with the Commission pursuant to Section 12(g) of the Exchange Act [15 U.S.C. § 78l(g)] and is listed on the NASDAQ Stock Market, Inc. At all times relevant herein, Microsoft was required to make and file certain periodic reports with the Commission. Microsoft's principal lines of business consist of providing software for personal computers, office systems and the Internet.

### 1 Facts

#### 1. Summary

During Microsoft's fiscal years[1] ended June 30, 1995, June 30, 1996, June 30, 1997 and June 30, 1998 (the "relevant period"), Microsoft maintained undisclosed reserves, accruals, allowances and liability accounts (collectively "reserves" or "reserve accounts") that (a) were not in conformity with generally accepted accounting principles ("GAAP") to a material extent, and/or (b) lacked properly documented support and substantiation, as required by the federal securities laws. Moreover, Microsoft failed to maintain internal controls that were adequate under the federal securities laws. Specifically, during the relevant period, Microsoft maintained between approximately $200 million and $900 million in unsupported and undisclosed reserves, a significant portion of which did not comply with GAAP, which resulted in material inaccuracies in filings made by Microsoft with the Commission.

#### 2. Microsoft Recorded Reserves Without a Properly Documented or Substantiated Basis

At the end of each fiscal quarter, certain of Microsoft's senior financial personnel, reviewed its reserves. The controllers of the operating units of Microsoft would provide these senior financial personnel with estimates for reserves for their units. These operational reserves represented contingencies faced by each individual operating unit and were described in Microsoft's internal documents as "hard contingencies supported by analysis," "transaction-based," and "systematic." Microsoft's internal accounting policies dictated that operating-level controllers use formulas and documented analyses to estimate and calculate operating reserves

each quarter. Additionally, Microsoft's stated policy was to periodically reconcile the operational reserves to the general ledger to ensure that a documented basis existed for the journal entries underlying the operational reserve balances.

By contrast, Microsoft created and maintained certain other reserves that existed only at the corporate level. These corporate reserves were not determined from factually based formulas, analysis or statistics. They were described in Microsoft's records as "based, in part, on judgment regarding the likelihood of future business events." They were also exempted from Microsoft's account reconciliation process for operational reserves described above, which was part of Microsoft's ordinary accounting procedures and was designed to ensure that there was a substantiated basis for the company's financial statements.

In addition, senior Microsoft financial personnel who reviewed reserve estimates from operating units frequently added additional amounts to the reserve estimates of the operating units, without the analysis or support that Microsoft required of its operating units. These corporate level additions were not determined from factually based formulas, analysis or statistics. Microsoft's records also described them as "based, in part, on judgment regarding the likelihood of future business events." These corporate level additions were also exempted from the company's account reconciliation process.

These senior Microsoft financial personnel did not obtain sufficient information concerning Microsoft's historical or actual experience with respect to the reserves being accrued for at the corporate level, nor did they rely on the documentation that was prepared by Microsoft's operating subsidiaries or units. Instead, they relied on their subjective judgments in making adjustments to those reserves that existed at the corporate level, without any significant factual support or analysis, and similarly made additions to the operating level reserves, without any significant factual support or analysis, such that these reserves significantly exceeded the amounts that would have been supported by the information from the operational level. As a result, these reserves did not have the documented support as required by the federal securities laws and lacked sufficient substantiation under GAAP.

Following the above-described quarterly financial review, senior financial personnel used the results of the review to prepare Microsoft's publicly filed financial statements and to cause journal entries to be made to Microsoft's general ledger reflecting the corporate level adjustments to the above-described reserves.

## 4.  Reserves Maintained or Used Without Proper Support or Basis

### a.  Cyclical Accrual For Marketing Expenses

Marketing expenses represented the largest expense item on Microsoft's statement of operations. For management purposes, Microsoft established budgets for marketing expenses for each fiscal quarter and fiscal year. Management generally determined these budgets as a percentage of forecasted revenue.

Microsoft typically recorded budgeted marketing expenses as its reported marketing expenses when preparing its quarterly reports filed with the Commission, even though it did not have a documented factual basis for believing that its marketing budget was a reasonable estimation of its marketing expenses. In order to account for the difference between the marketing expenses recorded in its books and records, and its budgeted marketing expenses, Microsoft maintained a "marketing accrual," to which these differences were recorded. Microsoft generally budgeted quarterly marketing expenses as a substantially constant percentage of revenue and the effect of this practice was to depict marketing expense as a substantially constant percentage of revenue on a quarterly basis throughout the year. During the first three quarters of a fiscal year, recorded expenses typically were less than budgeted expenses. Microsoft treated the difference between recorded expenses and budgeted expense as incurred but unbilled expenses. At the end of each of the first three fiscal quarters, Microsoft adjusted recorded marketing expense by increasing recorded expenses to the budgeted amount. The difference between recorded expenses and budget were credited to the marketing accrual. Because Microsoft had insufficient support for recording its marketing expenses as the budgeted amount, this practice did not satisfy the requirement of GAAP that marketing expenses be recorded as and when they are actually incurred.

Microsoft's marketing accrual (*i.e.,* the account containing the difference between recorded expenses and its budgeted marketing expenses) tended to increase during the first three fiscal quarters because, during each of these quarters, the difference between recorded and budgeted marketing expenses would be added into reported expenses. At the end of each fiscal year, Microsoft reversed the marketing accrual and released it into income.[2] The following chart shows the quarterly balances of the marketing accrual.

### Chart One



Marketing Accrual (in $000s)

The marketing accrual was not documented as required by the federal

securities laws and, to a significant extent, was not in conformity with GAAP. Because Microsoft did not analyze and document the use of budgeted amounts as a proxy for actual marketing expenditures, its quarterly financial statements filed with the Commission during the first three quarters of its fiscal years 1995, 1996, 1997 and 1998 did not comply with the requirements of the federal securities laws.

### a. Non-Cyclical Reserves

In addition to the annual cyclical accrual for marketing expenses, Microsoft maintained six other reserve accounts that failed to comply with the federal securities laws. These reserve accounts, along with the marketing accrual discussed above, were not in conformity with GAAP to a material extent and/or lacked properly documented support and substantiation as required by the federal securities laws.

### i. OEM Sales Reserve

Microsoft derives a significant amount of revenues from licensing agreements with manufacturers of personal computers. These manufacturers were referred to as original equipment manufacturers ("OEMs"). The OEMs installed Microsoft software on

new computers that they sold. Under the licensing agreements, the OEMs were required to report in arrears on a periodic basis the number of computers shipped with pre-installed software and the amount of net royalties due to Microsoft from the sales. In accounting for OEM revenue, Microsoft maintained certain accounts, including a so-called OEM GAAP accrual, which was accrued for earned but unbilled revenue, and a so-called OEM sales reserve.

The OEM GAAP accrual was estimated by OEM accounting specialists at the staff-level of Microsoft and was based upon forecasts having a substantial factual and analytical basis. By contrast, however, the OEM sales reserve was determined by the senior Microsoft financial personnel responsible for the corporate level reserve accounts. However, Microsoft had no substantiated basis for the corporate level OEM sales reserve or any methodology by which the balance in the OEM sales reserve was calculated. Accordingly, the OEM sales reserve was not documented as required by the federal securities laws and, to a significant extent, was not in conformity with GAAP. From time to time, as shown in Table 1, Microsoft released portions of the OEM sales reserve into income.

### ii. Accelerated Depreciation

Microsoft maintained a corporate reserve for accelerated depreciation. In fiscal years 1996 and 1997, Microsoft, for external reporting purposes, reduced the useful lives of its personal computers from three years to one year and the useful lives of its buildings from thirty years to fifteen years. These changes in depreciable lives were made because: (a) in the day-to-day management of the company, Microsoft treated personal computers as consumable supplies, and (b) buildings and related improvements were routinely gutted and refitted as groups moved freely about the Microsoft campus.

Without regard to the GAAP requirement that changes in depreciable lives of assets be accounted for *prospectively* rather than retrospectively,[3] Microsoft accounted for the impact of the new asset lives cumulatively. In other words, Microsoft accounted for its personal computers and buildings in fiscal years 1996 and 1997 as if they had always had useful lives of one and fifteen years respectively. This resulted in these assets having net book values that were less than they would have been in the absence of the changes in useful lives. The difference in value generated by the old and new useful lives was charged to depreciation expense and credited to an account that Microsoft called "accelerated depreciation."

Microsoft failed to disclose (a) the changes in asset lives and their effect, and (b) the use of the improper method of accounting for the accelerated depreciation reserve. The accelerated depreciation account was not in compliance with GAAP.

### iii. <u>Inventory Obsolescence</u>

Statement of Financial Accounting Standards No. 5 ("SFAS 5") requires that certain conditions exist before loss contingencies representing liabilities or asset impairments may be determined and the amount of a reserve accrued. The loss must be probable as of the balance sheet date and reasonably estimable; significantly, the loss must have occurred prior to the creation of the loss contingency and must not be in the future.[4] Furthermore, SFAS 5 prohibits the accrual of reserves for general or unspecified risks.[5] As discussed below, Microsoft did not comply with SFAS 5 because the company's senior financial personnel did not properly assess whether inventory losses had occurred, and made no effort to reasonably estimate the losses.

Microsoft maintained a corporate level reserve account for inventory obsolescence that supplemented the inventory obsolescence reserve accounts determined at the operating level. Microsoft maintained factually supported inventory reserve accounts at the operating level, where operations personnel evaluated and documented the need for such accounts. The corporate level inventory obsolescence reserve had no substantiated basis, as required by SFAS 5. This corporate reserve was not associated with any specific inventory nor was it supported by any statistical or documented analysis during the fiscal years ended June 30, 1995 through June 30, 1998. The corporate reserves, when combined with operating level reserves, caused the net book value of Microsoft's consolidated inventory to be *negative* at the end of the fiscal year ended June 30, 1997. This reserve was, to a significant extent, not in compliance with GAAP, and was not documented as required by the federal securities laws.

### iv. <u>Impaired Long Term Assets</u>

Microsoft maintained a corporate reserve account for the valuation of financial assets. According to internal documents, the reserve's purpose was to "allow for potential losses, upon disposition, of Microsoft's financial assets." These financial assets consisted of equity investments made in various technology companies. Microsoft amortized the cost of these financial assets with monthly charges to income without any basis for the

charges. The appropriate treatment under GAAP would have been to carry the assets at cost or write down the assets to their fair value in the event that the assets had suffered other than temporary declines in fair value.[6] Microsoft did not have a proper basis under GAAP for the amounts of the monthly charges in the account during its fiscal years 1995 through 1998.

### 4. Interest Rate Fluctuations

According to internal documents, the reserve account for interest income was designed to "provide for shifts in interest rates or other economic events which may adversely impact Microsoft's return on its portfolio." Adjustments to the interest income reserve were made at the "discretion" of senior financial personnel, and Microsoft did not have any factual analysis or statistical support for the balance in this account. This reserve was determined in a manner that did not comply with GAAP, and its balance and the adjustments thereto lacked a proper basis under GAAP.[7]

### vi. Manufacturing Facilities

Microsoft created a reserve in 1996 because it believed that the value of certain of its manufacturing facilities would be impaired because it was taking steps to outsource certain of its manufacturing activities and dispose of its own facilities that had been engaged in this manufacturing. Microsoft established a reserve account to provide for expenses associated with the disposition of its own plant and equipment, and associated employee-related expenses. Microsoft had no analysis or other factual basis supporting the balance in this account and, consequently, could not establish whether this account pertained to probable losses arising from an event or circumstance that had already occurred or whether it pertained to losses arising from future contingencies. This account therefore was not documented as required by the federal securities laws, and the balances in the account were not determined in a manner that was in conformity with GAAP.

### c. Cumulative Balances of Non-Cyclical Reserves

The cumulative balance of the six non-cyclical reserve accounts discussed above is depicted in the chart below:

**Chart Two**



Moreover, the amounts of quarterly adjustments to the above described six accounts, together with the amounts of the marketing expenses accrual, are depicted below:

<u>Table 1</u> is attached.

The balances and adjustments displayed in Chart Two and Table 1 above did not have the documentary support required by the federal securities laws, and a material portion thereof lacked a proper basis under GAAP.

## 4. Microsoft's Filings With the Commission

As a result of the foregoing, Microsoft filed with the Commission periodic reports and other filings during fiscal years 1995, 1996, 1997, and 1998 that included, directly or by incorporation, financial statements that misrepresented Microsoft's financial results by sometimes overstating income and on other occasions understating income.

## 5. Microsoft's Failure to Maintain Accurate and Complete Books and Records

In connection with its corporate reserve accounts, Microsoft failed to apply its own internal controls requiring a reconciliation of accounts to the general ledger. As noted above, the corporate reserve accounts were excepted from the company-wide policy that required all accounts be reconciled to the general ledger at least once per quarter.

Microsoft's accounting policies required the reconciliation of accounts as part of an extensive process to close the company's books each quarter. Among other things, the controllers and members of the corporate controllers' group reviewed activity in each general ledger account and reconciled the account balances to the general ledger, attaching supporting documentation for all activity and account balances. The reconciliation

policy and process were part of a process designed to help ensure the accuracy and integrity of Microsoft's internally and externally reported financial information. However, Microsoft failed to include the corporate reserve accounts in this reconciliation process. As a result, Microsoft lacked an important safeguard for helping ensure that the adjustments to the corporate reserve accounts and the account balances themselves were appropriate or accurately reported in conformity with GAAP.

## V.

## LEGAL ANALYSIS OF VIOLATIONS OF THE EXCHANGE ACT REPORTING, RECORD KEEPING, AND INTERNAL CONTROLS PROVISIONS

Section 13(a) of the Exchange Act requires issuers of registered securities to file periodic reports with the Commission containing information prescribed by specific Commission rules. Rules 13a-1 and 13a-13 require, respectively, the filing of Forms 10-K and 10-Q. Rule 12b-20 requires, in addition to information required in periodic reports by Commission rules, such further material information as may be necessary to make the required statements not misleading. Among other things, Microsoft was required to comply with GAAP.[8]

Microsoft was required to file periodic reports with the Commission during its fiscal years 1995 through 1998. These reports were required to be complete and accurate. See SEC v. Savoy Industries, 587 F.2d 1149, 1165 (D.C. Cir. 1978). As previously discussed, Microsoft recorded and adjusted its reserve accounts in ways not permitted under GAAP in its quarterly and annual filings. To a material extent, these reserve accounts lacked factually substantiated bases, and were therefore improper. The limited and inadequate documentation that Microsoft created with respect to these reserve accounts either did not substantiate any permitted basis for the accounts or indicated that the accounts were otherwise impermissible under GAAP. The inclusion of these reserves in Microsoft's financial statements and of the adjustments thereto in its income statements resulted in misstatements of income in certain periodic reports filed with the Commission during the relevant period, which were material. Consequently, Microsoft violated Section 13(a) and Rules 13a-1, 13a-13 and 12b-20 promulgated thereunder.

Section 13(b)(2)(A) of the Exchange Act requires issuers to "make and keep books, records, and accounts, which in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer." "A company's 'books and records' include not only general ledgers and accounting entries, but also memoranda and internal corporate reports." In the Matter of Gibson Greetings, Inc., Ward A. Cavanaugh, and James H. Johnsen, Admin. Proc. File No. 3-8866, Release No. 34-36357, 60 SEC Docket 1401 (Oct. 11, 1995). Further, Section 13(b)(2)(B) of the Exchange Act requires issuers to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles. As described above, Microsoft failed to keep books and records that were in conformity with Section 13(b)(2)(A).

SEC AP 009

Microsoft also had deficient internal controls relating to the corporate reserve accounts. The documentation created by Microsoft either did not adequately explain the basis for any of the corporate reserves or adjustments made to those accounts, or indicated that they were impermissible. In fact, senior Microsoft financial personnel relied upon their undocumented, subjective judgment rather than factual analysis or statistics in establishing and adjusting the corporate reserve accounts. In addition, the corporate reserve accounts were excluded from the company-wide reconciliation process, which required that all balance sheet accounts be reconciled to the general ledger with appropriate documentation of activity.

Consequently, Microsoft violated Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act.

## VI.

Based on the foregoing, the Securities and Exchange Commission finds that Microsoft violated Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act, and Rules 12b-20, 13a-1 and 13a-13 promulgated thereunder.

## VII.

In view of the foregoing, it is appropriate to impose the sanction specified in Respondent's Offer of Settlement.

## VIII.

## ORDER

**ACCORDINGLY, IT IS HEREBY ORDERED THAT,** pursuant to Section 21C of the Exchange Act, Microsoft cease-and-desist from committing or causing any violations of, and committing or causing any future violations of, Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act, and Rules 12b-20, 13a-1, and 13a-13 promulgated thereunder.

By the Commission.

Jonathan G. Katz
Secretary

---

[1]   Microsoft's fiscal year begins on July 1 and ends on June 30.

[2]   As a consequence of this reversal, the marketing accrual did not affect fiscal year-end results.

[3]   See. APB Opinion No. 20; Accounting Changes, which requires changes in estimates (such as depreciable lives of fixed assets) to be accounted for prospectively.

[4]   Statement of Financial Accounting Standards No. 5, Paragraph 8.

[5]   Id. at Paragraph 14.

[6] Accounting Principles Board Opinion No. 18, ¶ 6a.

[7] Statement of Financial Accounting Standards No. 115, ¶2; 16, provides that individual securities classified as either available-for-sale or held-to-maturity shall be written down to fair value if the enterprise determines that declines in fair value are other than temporary.

[8] 17 C.F.R. § 210.4-01(a)(1).

*http://www.sec.gov/litigation/admin/34-46017.htm*

SEC AP 011

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| JOE COMES and RILEY PAINT, INC., an Iowa corporation, | NO. CL82311 |
| Plaintiffs, | |
| v. | **PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |
| MICROSOFT CORPORATION, a Washington corporation, | |
| Defendant. | |

COMES NOW the Plaintiffs, and pursuant to Rule 1.52 of the Iowa Rules of Civil Procedure, request that Defendant produce for copying and/or inspection the following documents, items or computer files at the office of the Plaintiffs' attorneys Roxanne Barton Conlin, Roxanne Conlin & Associates, 319 7th Street, Suite 600, Des Moines, Iowa 50309, and Richard Hagstrom, 500 Washington Avenue South, Suite 4000, Minneapolis, Minnesota 55415, within 30 days from the date of the receipt of this request:

## DEFINITIONS AND INSTRUCTIONS

1. "Microsoft" shall mean and refer to defendant Microsoft Corporation, its parent, subsidiary or affiliated corporations, predecessors or successors in interest, past or present officers, directors, partners, agents, attorneys, employees, representatives, assigns, accountants, investigators and anyone else acting on its behalf.

2. "Operating System Software" means any version of MS-DOS or non-server version of Microsoft Windows for use on personal computers and includes, without limitation, MS-DOS, Windows 3.1, Windows for Workgroups 3.11, Windows NT Workstation 3.5, Windows NT Workstation 4.0, Windows 95, Windows 98, Windows 98 Second Edition,

**EXHIBIT 6**

**REQUEST FOR PRODUCTION NO. 62:**

All trial and hearing transcripts, deposition transcripts (including exhibits), and videotapes of any of these, from any of the matters listed in Document Request No. 61. All transcripts and exhibits should be produced in electronic format, to the extent available.

**REQUEST FOR PRODUCTION NO. 63:**

All documents produced by Microsoft or to Microsoft (including any produced by non-parties) in any of the following matters: *Be Inc. v. Microsoft Corp.*, U.S.D.C. (N.D. Cal.) Case No. 02837MEJ; *Burst Corp. v. Microsoft Corp.*, U.S.D.C. (N.D. Cal.) Case No. 02-cv-2952; *Microsoft Corp. v. Lindows.com*, U.S.D.C. (W.D. Wash.) Case No. C01-2115C; *Netscape v. Microsoft Corp.*, U.S.D.C. (D.D.C.) Case No. 1:02cv97; *RealNetworks, Inc. v. Microsoft Corp.*, No. C 03-5717 (N.D. Cal.); *Sun Microsystems, Inc. v. Microsoft Corp.*, U.S.D.C. (N.D. Cal.) Case No. C-02-01150 PVT. All documents should be produced in electronic form (single page TIFF images with cross references to bates numbers), to the extent available. Furthermore, all documents produced in response to this request should indicate the specific request(s) for production from the aforementioned action(s) to which they were responsive.

**REQUEST FOR PRODUCTION NO. 64:**

All trial and hearing transcripts, deposition transcripts (including exhibits), and videotapes of any of these from any of the matters listed in Document Request No. 63. All transcripts and exhibits should be produced in electronic format, to the extent available.

**REQUEST FOR PRODUCTION NO. 65:**

Roxanne Conlin & Associates, P.C.

Roxanne Barton Conlin
319 7th Street, Suite 600
Des Moines, Iowa  50309
Phone:  (515) 283-1111
Fax:  (515) 282-0477

and

Richard M. Hagstrom
**Zelle, Hofmann, Voelbel, Mason & Gette LLP**
500 Washington Avenue South
Minneapolis, Minnesota 55415
Phone:  (612) 339-2020
Fax: (612) 336-9100

**ATTORNEYS FOR PLAINTIFFS AND ALL
OTHERS SIMILAR SITUATED**

Copy to:

Edward Remsburg
Ahlers & Cooney, P.C.
100 Court Avenue
Suite 600
Des Moines, IA  50309

David B. Tulchin
Joseph E. Neuhaus
Sullivan & Cromwell
125 Broad Street
New York, New York 10004
**Attorneys for Defendant**

**CERTIFICATE OF SERVICE**
The undersigned certifies that the foregoing instrument was
served upon all parties to the above cause to each of the attorneys
of record herein at their respective addresses disclosed on the
pleadings on _____, 20__

By: ☑ U.S. Mail            ☐ FAX
    ☐ Hand Delivered       ☐ Overnight Courier
    ☐ Certified Mail       ☐ Other:

Signature _____

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

JOE COMES and RILEY PAINT, INC.　　　:　No. CL82311
an Iowa corporation,

　　　　　　　　　　　　　　　　　　:

　　　　　　　Plaintiffs,

　　　　　　　　　　　　　　　　　　:

　　v.　　　　　　　　　　　　　　　:

MICROSOFT CORPORATION,　　　　　　　:　MEMORANDUM IN SUPPORT
a Washington corporation,　　　　　　OF PLAINTIFFS' MOTION
　　　　　　　　　　　　　　　　　　:　TO COMPEL DISCOVERY
　　　　　　　　　　　　　　　　　　　FROM MICROSOFT
　　　　　　　Defendants.　　　　　　:

**FILED**
CLERK DISTRICT COURT
POLK COUNTY
05 MAR 28 PM

## INTRODUCTION

In this motion, Plaintiffs Joe Comes and Riley Paint, Inc. ("Plaintiffs") request that the Court compel the defendant, Microsoft Corporation ("Microsoft"), to produce documents and provide information responsive to requests made by Plaintiffs. In the discovery requests at issue in this motion (Requests for Production Nos. 63-67), Plaintiffs simply seek material already produced in other lawsuits that is relevant to Plaintiffs' claims in this action. Plaintiffs also seek certain missing pages from incomplete documents that were produced by Microsoft as part of coordinated discovery. Finally, Plaintiffs seek expert reports and deposition transcripts from the California and MDL proceedings, which Microsoft had agreed to provide Plaintiffs in July 2004 but which Microsoft continues to withhold. Because Microsoft refuses to fulfill its discovery obligations under the Iowa Rules of Civil Procedure, Plaintiffs now ask the Court to intervene.

## BACKGROUND

Plaintiffs contend that, since as early as 1988, Microsoft has engaged in a course of anticompetitive conduct with the purpose and ultimate effect of eliminating competition in the markets for Intel-compatible personal computer ("PC") operating systems and for word

EXHIBIT 7

*v. Deere & Co.*, 282 N.W.2d 735, 738 (Iowa 1979). The rationale underlying Iowa's liberal policy is that discovery is designed to enable preparation for trial, as well as to aid in the development of proof. *See id.*

"[A]s long as the parties request information or documents relevant to the claims at issue in the case, and such requests are tendered in good faith and are not unduly burdensome, discovery shall proceed." *St. Paul Reins. Co.*, 198 F.R.D. at 511. The party opposing discovery must show that the information sought is privileged or irrelevant. *Nat'l Dietary Research.*, 454 N.W.2d at 823. A district court is granted "wide discretion" in ruling on discovery matters. *Shook v. City of Davenport*, 497 N.W.2d 883, 885 (Iowa 1993).

**A.     The Court Should Order Microsoft To Provide Plaintiffs With Materials That Were Produced In Other Actions Involving Microsoft.**

The materials that Plaintiffs seek are relevant to their claims in this action:

**Requests For Production Nos. 63 & 64:**

These requests seek all documents produced by Microsoft or to Microsoft, along with all hearing, trial and deposition transcripts (including exhibits), in any of the following matters: *Be Inc. v. Microsoft Corp.; Burst.com, Inc. v. Microsoft Corp.; Microsoft Corp. v. Lindows.com; Netscape v. Microsoft Corp.; RealNetworks, Inc. v. Microsoft Corp.;* and *Sun Microsystems, Inc. v. Microsoft Corp.* These cases all raised issues of Microsoft's anticompetitive conduct during the Class Period. While Microsoft summarily states that the requests seek documents that are irrelevant to Plaintiffs' claims, *see* Conlin Aff. Ex. C (responses to Requests for Production Nos. 63-64), Microsoft is wrong:

- *Be Inc. v. Microsoft Corp.*: Be Incorporated ("Be") was the developer of an operating system for Intel-compatible PCs known as the BeOS. Be alleged that Microsoft impeded its ability to distribute its operating system through the OEM channel by *inter alia*

4

invoking certain anticompetitive clauses in Microsoft's OEM license agreements. *See, e.g.,* Be Inc. Complaint ¶¶ 25-30, Conlin Aff. Ex. D.   Plaintiffs make precisely these allegations in their Third Amended Petition. *See* Petition ¶¶ 116-117, 183-187.

- *Burst.com, Inc. v. Microsoft Corp.*:   Burst.com, Inc. ("Burst") was the developer of technology that allowed high quality video to be delivered over computer networks such as the internet.   Burst alleged *inter alia* that Microsoft misappropriated Burst's intellectual property and that but-for Microsoft's conduct, Burst would be a profitable ongoing business, providing customers with higher quality television-like programming over the internet and other networks than currently exists today. *See* Burst.com, Inc. Complaint ¶¶ 24, 77-92, Conlin Aff. Ex. E.  Burst claimed that, because streaming media promised to revolutionize computing, Microsoft recognized the challenge it posed to its operating systems monopoly and sought to neutralize the threat in order to protect its monopoly power. *Id.* ¶¶ 36-37.  Microsoft's efforts to undermine so-called "middleware" threats to its operating systems monopoly—including the threat posed by streaming media—are an integral part of Plaintiffs' claims. *See* Petition ¶¶ 104, 111-117, 127-128. Significantly, the Burst case has also raised issues of Microsoft document retention (and destruction), both in that particular matter *and with respect to prior government investigations and subsequent class actions, including this lawsuit. See* Burst.com, Inc.'s Motion for Spoliation Instructions at 12, 28-33, Conlin Aff. Ex. F.  Access to materials from that case is therefore essential to determine the extent to which such destruction may have occurred and whether spoliation instructions will be appropriate in this lawsuit.

- *Microsoft Corp. v. Lindows.com, Inc.*:   Lindows.com, Inc. ("Lindows") is the developer of a Linux-based Intel-compatible PC operating system that recently has attempted to

compete with Microsoft. Microsoft filed a trademark infringement claim against Lindows, and Lindows filed a counterclaim that included allegations of unfair competition against Microsoft. *See* Lindows.com, Inc. Answer & Counterclaim, Conlin Aff. Ex. G. As Microsoft has admitted, discovery taken in that case covered issues that are relevant to this action. For instance, the deposition of Michael Robertson, Lindows' CEO, contains testimony with respect to Microsoft's alleged interference with Lindows' business relationship with Microtel, an OEM. *See* Microsoft Minn. Br., Conlin Aff. Ex. H. The 30(b)(6) deposition of Microtel "would also likely contain information" relevant to that allegation. *See id.* Microsoft's efforts to prevent distribution of competing operating systems through the OEM channel are an integral part of Plaintiffs' claims. *See* Petition ¶¶ 103, 118-126, 183-191.

- *Netscape Communications Corp. v. Microsoft Corp.*: Netscape Communications Corp. ("Netscape") was the developer of the popular Netscape Navigator web browser. Microsoft viewed Navigator as a threat to its operating systems monopoly. Netscape alleged that Microsoft engaged in a series of anticompetitive actions to eliminate the threat posed by Netscape's Navigator web browser. *See* Netscape Communications Corp. Complaint, Conlin Aff. Ex. I. Microsoft's efforts to undermine so-called "middleware" threats to its operating systems monopoly—including the threat posed by Netscape—are an integral part of Plaintiffs' claims. *See* Petition ¶¶ 104, 137-178.

- *RealNetworks, Inc. v. Microsoft Corp.*: RealNetworks, Inc. ("RealNetworks") is the developer of a popular streaming media technology. Microsoft has viewed RealNetworks' technology as a threat to its operating systems monopoly. RealNetworks alleged that Microsoft engaged in a series of anticompetitive actions to eliminate the

6

threat posed by its streaming media technology, including *inter alia* the denial of access to certain interfaces in Microsoft's monopoly Windows operating system. *See* RealNetworks, Inc. Complaint ¶¶ 116-195, Conlin Aff. Ex. J. Microsoft's efforts to undermine so-called "middleware" threats to its operating systems monopoly—including the threat posed by RealNetworks—are an integral part of Plaintiffs' claims. *See* Petition ¶¶ 104, 111-115, 127-128.

- *Sun Microsystems, Inc. v. Microsoft Corp.*: Sun Microsystems, Inc. ("Sun Microsystems") is the developer of a middleware technology known as Java. Microsoft has viewed Java as a threat to its operating systems monopoly. Sun Microsystems alleged that Microsoft engaged in illegal, exclusionary conduct to eradicate the threat posed by its Java technologies to Microsoft's monopoly power. *See* Sun Microsystems, Inc. Complaint ¶¶ 73-95, Conlin Aff. Ex. K. Microsoft's efforts to undermine so-called "middleware" threats to its operating systems monopoly—including the threat posed by Sun's Java technologies—are an integral part of Plaintiffs' claims. *See* Petition ¶¶ 104, 179-182.

Microsoft claims that the issues raised in these cases were "amply covered" in coordinated discovery. *See* Conlin Aff. Ex. C (Response to Request for Production No. 63). However, it is not Microsoft's place to determine whether sufficient discovery has occurred on certain issues. The materials are discoverable under Iowa's Rules of Civil Procedure, Plaintiffs are entitled to the information, and the requests impose very limited burdens on Microsoft since *the material has already been produced in other actions.* Accordingly, the Court should order the immediate production of those materials by Microsoft.

**Requests For Production Nos. 65 & 66:**

7

DATED: March 2005

ROXANNE CONLIN & ASSOCIATES, P.C.

By _____
Roxanne Barton Conlin
319 Seventh Street
Suite 600
Des Moines, Iowa  50309
Phone:  (515) 282-3329
Fax:  (515) 282-0318


Richard M. Hagstrom
Michael E. Jacobs
ZELLE, HOFMANN, VOELBEL, MASON & GETTE LLP
500 Washington Avenue South
Suite 4000
Minneapolis, Minnesota  55415
Phone:  (612) 339-2020
Fax:  (612) 336-9100


Copy to:

Edward Remsburg
Ahlers & Cooney, P.C.
100 Court Avenue
Suite 600
Des Moines, IA  50309

David B. Tulchin
Joseph E. Neuhaus
Sullivan & Cromwell
125 Broad Street
New York, New York 10004
Attorneys for Defendant


CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was
served upon all parties to the above cause to each of the attorneys
of record herein at their respective addresses disclosed on the
pleadings on _____, 20___.

By:  ☐ U.S. Mail          ☐ FAX
     ☐ Hand Delivered     ☐ Overnight Courier
     ☐ Certified Mail     ☐ Other:

Signature _____


291562v2

11

FILED
POLK COUNTY IA

IN THE IOWA DISTRICT COURT FOR POLK COUNTY '05 MAY -9 PM 4: 02

CLERK DISTRICT COURT

| | | |
|---|---|---|
| JOE COMBS and RILEY PAINT, INC.<br>an Iowa corporation, | : | No. CL82311 |
| | : | |
| Plaintiffs, | : | |
| | : | **REPLY IN SUPPORT OF PLAINTIFFS'** |
| v. | : | **MOTION TO COMPEL AND** |
| | : | **RESISTANCE TO MICROSOFT'S** |
| MICROSOFT CORPORATION,<br>a Washington corporation, | : | **MOTION FOR A PROTECTIVE ORDER** |
| | | |
| Defendants. | | |

**ROXANNE CONLIN & ASSOCIATES, P.C.**
Roxanne Barton Conlin
319 Seventh Street
Suite 600
Des Moines, Iowa 50309
Phone: (515) 282-3329
Fax: (515) 282-0318

**ZELLE, HOFMANN, VOELBEL,
MASON & GETTE LLP**
Richard M. Hagstrom
Michael E. Jacobs
500 Washington Avenue South
Suite 4000
Minneapolis, Minnesota 55415
Phone: (612) 339-2020
Fax: (612) 336-9100

**ATTORNEYS FOR PLAINTIFFS**

**AND ALL OTHER SIMILARLY SITUATED**

**EXHIBIT 8**

monopoly from the middleware threat generally, and from RealNetworks' streaming media technology in particular. *See* Petition ¶¶ 104, 111-115, 127-128.

Microsoft's remaining argument is that Plaintiffs' Petition does not specifically mention Microsoft's bundling of its Windows Media Player with its operating system. However, Microsoft's bundling of its Media Player simply represents one particular tactic Microsoft employed in its effort to undermine the threat posed by RealNetworks streaming media technology *to Microsoft's operating systems monopoly* (just as Microsoft employed a similar tactic of bundling its Internet Explorer web browser as part of its anticompetitive campaign against Netscape Navigator). Plaintiffs are not required to set forth every fact underlying their case before discovery is permitted. *See Gordon*, 356 N.W.2d at 564. Plaintiffs' existing allegations are more than enough to permit discovery on these issues.

### *Burst.com v. Microsoft Corp.*

*Burst.com*, like the *RealNetworks* case, involves allegations that Microsoft engaged in exclusionary conduct in one market (streaming media) in order to protect its monopoly power in another (operating systems). Although Microsoft seeks to characterize *Burst.com* as dealing "primarily" with Microsoft's infringement of Burst.com's patents and misappropriation of Burst.com's trade secrets, Microsoft does not dispute that the *Burst.com* case raised issues relating to Microsoft's efforts to protect its operating systems monopoly. *See Burst.com* Complaint ¶¶ 36-37, Conlin Aff. (March 28, 2005) Ex E.[13] Thus, the *Burst.com* materials relate to the subject matter of this lawsuit.

---

[13] Microsoft made no effort to negotiate the scope of Plaintiffs' request (*e.g.*, to limit any production to materials that relate to Burst.com's antitrust claims). Microsoft flatly refused to produce any materials from the *Burst.com* case. Microsoft's efforts now to point out other issues involved in the lawsuit simply represents an attempt by Microsoft to capitalize on its prior obstinance.

While Microsoft notes that Plaintiffs' Petition did not specifically mention *Burst.com*, Plaintiffs' Petition undeniably mentions Microsoft's efforts to undermine the threat posed by middleware generally, and by streaming media software in particular, to the applications barrier to entry. *See* Petition ¶¶ 104, 111-115, 127-128. That is sufficient to permit the requested discovery.

Furthermore, the plaintiff in the *Burst.com* case discovered that Microsoft may have improperly *destroyed evidence*—including emails—purposely and with the intent to make them unavailable for litigation. This proceeding was pending while Microsoft's alleged wholesale destruction of evidence continued. Destruction of evidence is always relevant and can result in adverse inference instructions. Thus, Iowa Plaintiffs are affected directly by Microsoft's efforts to conceal its continuing anticompetitive conduct.

### *Microsoft Corp. v. Lindows.com.*

While Microsoft notes that Plaintiffs' Petition did not specifically mention *Lindows.com*, Plaintiffs' Petition undeniably mentions Microsoft's efforts to foreclose access by competing operating systems developers to the original equipment manufacturer ("OEM") channel. *See* Petition ¶¶ 103, 118-126, 183-191. The *Lindows.com* case raised such issues, as Microsoft conceded in Minnesota:

> [P]ortions of [the deposition transcript of Michael Robertson, Lindows.com's CEO] contain testimony by Mr. Robertson that Microsoft interfered with Lindows.com's business relationship with Microtel [an OEM].

*See* Affidavit of Brendan T. Mangan ¶ 10, Conlin Reply Aff. Ex. B. Relevant issues were raised in the *Lindows.com* case.[14]

### *Netscape Communications Corp. v Microsoft Corp.*

---

[14] Although the *Gordon* plaintiff stated that the *Lindows.com* case was unrelated, *see* Protective Order Memo. at 16, that was before Microsoft acknowledged that relevant issues had been raised in *confidential portions of discovery* to which the *Gordon* plaintiffs lacked access – a fact which Microsoft fails to disclose.

16

Plaintiffs to gain access to the documents from a government investigation that resulted in the European Union imposing conduct remedies and a fine of $613 million on Microsoft. *See* BBC News article, Conlin Reply Aff. Ex. L. For the reasons set forth above, the Court should compel Microsoft to produce the requested materials and deny Microsoft's effort to end discovery in this lawsuit before it has even begun.

DATED: May 9, 2005                   ROXANNE CONLIN & ASSOCIATES, P.C.


By_____
   Roxanne Barton Conlin
   319 Seventh Street
   Suite 600
   Des Moines, Iowa  50309
   Phone: (515) 282-3329
   Fax: (515) 282-0318


   Richard M. Hagstrom
   Michael E. Jacobs
   ZELLE, HOFMANN, VOELBEL, MASON
     & GETTE LLP
   500 Washington Avenue South
   Suite 4000
   Minneapolis, Minnesota  55415
   Phone: (612) 339-2020
   Fax: (612) 336-9100

   Attorneys for Plaintiffs


Copy to:

Edward Remsburg
Ahlers & Cooney, P.C.
100 Court Avenue
Suite 600
Des Moines, IA  50309

25

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| JOE COMES, JEFF C. JENNISON and RILEY PAINT, INC., an Iowa Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION, a Washington Corporation,<br><br>Defendant. | Case No. CL82311<br><br>**RULING ON PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND DEFENDANT'S MOTION FOR A PROTECTIVE ORDER** |

On July 6, 2005, the above captioned matter came before the Court. The Plaintiffs, Joe Comes, Jeff C. Jennison and Riley Paint, Inc., were represented by attorneys, Roxanne Barton Conlin, Michael Jacobs and Richard Hagstrom. The Defendant, Microsoft Corporation (hereinafter "Microsoft"), was represented by attorneys, Sharon Nelles, Joseph Neuhaus and Edward Remsburg. The Court having reviewed the file and the briefs filed by both parties enters the following ruling:

### PROCEDURAL HISTORY

This action was commenced in February 2002. The Plaintiffs filed a Third-Amended Petition on February 13, 2003. In December of 2004, the Iowa District Court addressed the Plaintiffs' (first) Motion to Compel. Prior to the Ruling on the Plaintiffs' (first) Motion to Compel, the Plaintiffs served the Defendant with the Plaintiffs' Second Set of Requests for Production in September of 2004. By March 2005, the Defendant had failed to comply with the Plaintiffs' Second Set of Requests for Production and refused to provide missing pages from various documents that the Defendant had previously produced as part of the coordinated discovery. The subject of the Second Set

1

**EXHIBIT 9**

behavior. Even though the Court has allowed collateral estoppel to apply in regards to the findings of fact at issue in the December 2004 Collateral Estoppel Ruling, the Plaintiffs in this case are not willing to just rely on those facts which are the subject of the December 2004 Collateral Estoppel Ruling and they are entitled to "discover any information that is not privileged and that is relevant to the subject matter of the lawsuit." *Mediacom Iowa*, 682 N.W.2d at 66 (Iowa 2004)(citing *Nat'l Dietary*, 454 N.W.2d at 823). Therefore, the Defendant's Motion for a Protective Order is denied. ·

## ORDER

IT IS THERFORE ORDERED, ADJUDGED AND DECREED that the Plaintiffs' Motion to Compel is GRANTED with the exception that the Defendant is not required to identify the handwriting on the documents already produced to the Plaintiffs.

IT IS THERFORE ORDERED, ADJUDGED AND DECREED that the Defendant's Motion for a Protective Order is GRANTED.

IT IS SO ORDERED this 22 day of July, 2005

SCOTT D. ROSENBERG, JUDGE
Fifth Judicial District of Iowa

COPIES TO:
Roxanne Barton Conlin
Roxanne Conlin & Associates, P.C.
319 7th Street, Suite 600
Des Moines, IA 50309
ATTORNEY FOR PLAINTIFFS

Sharon L. Nelles
Joseph E. Neuhaus
Sullivan & Cromwell, LLP
125 Broad Street
New York, NY 10004
ATTORNEY FOR DEFENDANT

Edward Remsburg
Ahlers & Cooney, P.C.
100 Court Avenue, Suite 600
Des Moines, IA 50309
ATTORNEY FOR DEFENDANT

22

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | | |
|---|---|---|
| JOE COMES and<br>COMES VENDING, INC., | : | NO. _____ |
| Plaintiffs, | : | *cL 82311* |
| | : | |
| vs. | : | PETITION |
| MICROSOFT CORPORATION,<br>a Washington corporation, | : | |
| Defendant. | : | |

COMES NOW Plaintiffs and for their complaint against Defendant Microsoft

Corporation ("Microsoft"), Plaintiffs allege on behalf of themselves and all others similarly

situated that:

### SUMMARY OF THIS ACTION

1.     This is a class action for damages and other relief to which Plaintiffs and all

others similarly situated are entitled due to Microsoft's unlawful pricing of its Windows 98

operating system for Intel-based personal computers.

2.     For the purposes of this action, the following terms have the meanings stated and

explained.

(a)     A "personal computer," or "PC," is a digital information processing device

designed for use by one person at a time.  A PC consists of the central processing components of

a microprocessor and main memory, and mass data storage, usually a hard disk. A typical PC

system consists of a PC, peripheral devices including a monitor, a keyboard, a mouse, and a

**EXHIBIT 10**

Roxanne Barton Conlin
Roxanne Conlin & Associates, P.C.
The Plaza - Suite 5
300 Walnut Street
Des Moines, Iowa  50309
Phone:  (515) 282-3329
Fax:  (515) 282-0318
ATTORNEY FOR PLAINTIFF

24