## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | | |
|---|---|---|
| JOE COMES and<br>RILEY PAINT, INC., an Iowa<br>Corporation | : | NO. CV-05-562 |
| | : | |
| Plaintiffs, | : | PLAINTIFFS' MEMORANDUM |
| | : | IN SUPPORT OF MOTION FOR |
| vs. | : | EXPEDITED RELIEF ON |
| | : | MOTION TO REMAND |
| MICROSOFT CORPORATION, | : | |
| A Washington Corporation, | : | |
| | : | |
| Defendants. | : | |

This case was filed in February 2000. Plaintiffs amended their petition on March 8, 2000, October 7, 2002, and February 14, 2003. Plaintiffs sought class certification for two classes of consumers, which was granted by the Iowa District Court on October 16, 2003. Microsoft appealed the class certification decision. On May 13, 2005, the Iowa Supreme Court ruled that class certification was properly granted.

Substantial discovery has taken place and continues to occur since class certification. Significant time and expense has also been incurred by Plaintiffs in pretrial preparation. On July 6, 2005, the Iowa District Court appointed a Special Master at the joint request of Plaintiffs and Microsoft to rule on objections to trial exhibits and designations of prior testimony. *See* Exhibit A. On July 7, 2005, the Iowa District Court issued an Amended and Substituted Pre-Trial Scheduling Order, setting forth deadlines for the completion of pretrial activities, including the completion of fact discovery, exchange of expert reports, completion of expert depositions, exchange of witness lists, filing of dispositive motions, filing of motions in limine, submission of

jury instructions and resolution of all objections to trial exhibits and testimony designations. Trial is scheduled to commence on September 18, 2006. *See* Exhibit B.

There has also been substantial pretrial motion practice on some important substantive issues. Most importantly, Plaintiffs filed a motion seeking to collaterally estop Microsoft from re-litigating certain factual findings and conclusions of law established in *United States v. Microsoft Corp.* The Iowa District Court granted that motion on December 17, 2004. *See* Exhibit C. Microsoft chose to seek an interlocutory appeal of that order, claiming it was a critical issue that had to be decided by the Iowa Supreme Court before it and Plaintiffs spent the time and money to litigate the remaining issues. *See* Exhibit D. Plaintiffs agreed to an interlocutory appeal on the condition that it be briefed, heard and decided on an expedited basis so that the pretrial schedule and September 18, 2006 trial date would not be disturbed. *See* Exhibit E, pp. 12-16. An expedited interlocutory appeal was granted by the Iowa Supreme Court. The appeal was briefed on an expedited schedule, which has been completed and the Iowa Supreme Court has issued an order setting the hearing for the week of December 5, 2005. *See* Exhibit F.

Now, after this case has been pending in state court for five and one-half years, after Plaintiffs have invested extraordinary amounts of time and money in discovery, pretrial motion practice and on interlocutory appeals, Microsoft has engaged in further chicanery by improperly removing this case to federal court in yet another effort to postpone the September 18, 2006 trial. In what amounts to a misrepresentation by omission, in its LR 8.1(a)(2) List of Pending Matters Microsoft has advised this Court that nothing is pending in state court that "may require resolution" by this Court. *See* Exhibit G. Similarly, in its Notice of Removal, Microsoft does not even mention what is perhaps the most important fact (for Microsoft) in this case at the

moment – the pending appeal before the Iowa Supreme Court regarding the collateral estoppel ruling issued by the Iowa District Court and its impact on the September 18, 2006 trial.

Microsoft should not be allowed to delay its day of reckoning any further, particularly through an improper removal that is so obviously designed to force Plaintiffs through a procedural maze in federal court that will moot the December hearing before the Iowa Supreme Court on collateral estoppel, and the September 18, 2006 trial date that Plaintiffs have worked so hard to obtain. Justice delayed is justice denied. With the passage of time memories fade, and witnesses move on and become unavailable. The longer Microsoft can postpone trial, the more likely it will try to escape some of the consequences of the harm it has caused to Iowa consumers by characterizing its conduct as "ancient history."

For all of these reasons, Plaintiffs respectfully request an expedited hearing and decision on their motion to remand. Expedited relief is necessary to prevent substantial and irreparable injury that Plaintiffs will inevitably sustain if Microsoft is allowed to delay resolution. Plaintiffs respectfully request that their motion to remand be heard and decided sufficiently in advance of the date that the Iowa Supreme Court has set aside to hear the collateral estoppel appeal.

## CONCLUSION

Plaintiffs respectfully request that their motion for expedited resolution on their motion to remand be granted, and that the following schedule be adopted:

| | |
|---|---|
| Plaintiffs' motion to remand due: | October 18, 2005 |
| Microsoft opposition to remand due: | October 24, 2005 |
| Plaintiffs reply in support of remand due: | October 28, 2005 |
| Oral argument to occur on or before: | November 4, 2005 |

Dated:  October 18, 2005

/s/ Roxanne Barton Conlin
Roxanne Barton Conlin
Roxanne Conlin & Associates, P.C.
319 7th Street, Suite 600
Des Moines, Iowa  50309
Phone:  (515) 283-1111
Fax:  (515) 282-0477
Email: roxlaw@aol.com

 /s/ Richard M. Hagstrom
Richard M. Hagstrom
Zelle, Hofmann, Voelbel, Mason & Gette
500 Washington Avenue South
Suite 4000
Minneapolis, MN 55415
Phone: 612-339-2020
Fax: 612-336-9100
Email: Rhagstrom@zelle.com
ATTORNEYS FOR PLAINTIFFS

I hereby certify that on October 18, 2005. I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of said filing to all CM/ECF participants.

David B. Tulchin
Joseph E. Neuhaus
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004
Email: NEUHAUSJ@sullcrom.com
TULCHIND@sullcrom.com

Edward Remsburg
Ahlers & Cooney, P.C.
100 Court Avenue
Suite 600
Des Moines, Iowa 50309
EREMSBURG@ahlerslaw.com

Brent B. Green
Bradley C. Obermeier
Duncan, Green, Brown & Langeness
A Professional Corporation
400 Locust Street, Suite 380
Des Moines, Iowa 50309
bgreen@duncangreenlaw.com

ATTORNEYS FOR DEFENDANT

/s/ Roxanne Barton Conlin
Roxanne Barton Conlin
Roxanne Conlin & Associates, P.C.
319 7th Street, Suite 600
Des Moines, Iowa  50309
Phone:  (515) 283-1111
Fax:  (515) 282-0477
Email: roxlaw@aol.com


 /s/ Richard M. Hagstrom
Richard M. Hagstrom
Zelle, Hofmann, Voelbel, Mason & Gette
500 Washington Avenue South
Suite 4000
Minneapolis, MN 55415
Phone: 612-339-2020
Fax:  612-336-9100
Email: Rhagstrom@zelle.com

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

JOE COMES and RILEY PAINT, INC.          :          No. CL92311
an Iowa corporation,

                                         :

            Plaintiff,

                                         :

      v.                                 :

MICROSOFT CORPORATION,                   :
a Washington corporation,

                                         :

            Defendants.

                                         :

### ORDER APPOINTING SPECIAL MASTER

The above entitled matter came before the Honorable Scott D. Rosenberg on July

2005.

      WHEREAS the parties have advised the Court that, based on the scope of the allegations

in the Third Amended Petition, and on their respective expectations, that there will likely be a

large number – perhaps thousands – of exhibits designated for trial, and that many of those

exhibits may be the subject of objection on grounds other than relevance, and

      WHEREAS the parties have further advised the Court that there will likely also be a large

number – perhaps many thousands – of lines of prior testimony designated to be played or read

to the jury in this action, and that many of those may also be the subject of objection on grounds

other than relevance, and

      WHEREAS the parties have jointly requested that the Court appoint a Special Master to

rule on objections to trial exhibits and designations of prior testimony, and



WHEREAS the parties have further agreed on the appointment of Mark McCormick of the firm of Belin, Lamson, McCormick, Zumbach & Flynn in Des Moines, Iowa, as said Special Master, and

WHEREAS Mr. McCormick has disclosed to the parties that he has previously represented the Court in a private matter, and the parties have waived any objections to Mr. McCormick serving based on that fact,

NOW THEREFORE the Court ORDERS as follows:

1.     The Court finds that exceptional circumstances exist within the meaning of Iowa R. Civ. P. 1.935 requiring the appointment of a Special Master.

2.     Pursuant to the parties' agreement, the Court appoints Mark McCormick to serve as a Special Master. Mr. McCormick shall have all the powers set forth in Iowa R. Civ. P. 1.937. Mr. McCormick shall rule on all objections to trial exhibits and to prior testimony, including claims of privilege or non-responsiveness except that objections under Iowa R. Evid. 5.401, 5.402, or 5.403, or other objections that can be made only in light of the trial record, may be made at trial. The parties may seek de novo review of Mr. McCormick's findings pursuant to a schedule to be established.

3.     The parties shall split Mr. McCormick's fees equally.

4.     The Court requests that Mr. McCormick meet with the parties after a Pretrial Scheduling Order is entered in this case to establish a process for resolving objections, including assisting the parties in arriving at appropriate stipulations. The schedule shall stage the parties' designations and objections so that rulings by the Special Master are made on a rolling basis, the final ruling of which will be required to be made by the deadline set forth in the Pretrial Scheduling Order.



3

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

JOE COMES and RILEY PAINT, INC.        :          No. CL82311
an Iowa corporation,
                                       :
                Plaintiffs,
                                       :
        v.
                                       :
MICROSOFT CORPORATION,
a Washington corporation,              :

                Defendants.            :

FILED
POLK COUNTY, IA.
05 JUL -7 AM 10: 11
CLERK DISTRICT COURT

---

### AMENDED AND SUBSTITUTED PRE-TRIAL SCHEDULING ORDER

IT IS HEREBY ORDERED that the following partial schedule shall apply in this matter:

| | |
|---|---|
| Deadline for motions to amend petition and for adding additional parties | September 16, 2005 (52 weeks from trial date) |
| Court to appoint Special Master[1] | October 14, 2005 (48 weeks from trial date) |
| Special Master, after having met with parties, shall issue a schedule for the parties' designation of trial exhibits and prior testimony and their respective objections thereto.[2] | November 11, 2005 (44 weeks from trial date) |
| Plaintiffs to disclose expert witnesses and serve expert reports and supporting back-up material | March 3, 2006 (28 weeks from trial date) |

---

[1] In its Order appointing a Special Master, the Court will define the duties of the Special Master and establish the procedure for any appeals of the Special Master's rulings.

[2] Objections under Iowa R. Evid. 5.401, 5.402, or 5.403 are to be resolved by the Court in motions in limine or at trial.



PLAINTIFF'S EXHIBIT
3

| | |
|---|---|
| Deadline for depositions of plaintiffs' experts | April 14, 2006 (22 weeks from trial date) |
| Defendants to disclose expert witnesses and serve expert reports and supporting back-up material | April 21, 2006 (21 weeks from trial date) |
| Deadline for depositions of defendant's experts | June 2, 2006 (15 weeks from trial date) |
| Close of fact discovery (including due dates for responses to any written discovery) | June 2, 2006 (15 weeks from trial date) |
| Plaintiffs' initial disclosure of witnesses to be called at trial | June 2, 2006 (15 weeks from trial date) |
| Deadline for filing dispositive motions | June 9, 2006 (14 weeks from trial date) |
| Plaintiffs to disclose rebuttal expert witnesses and serve expert reports and supporting back-up material | June 9, 2006 (14 weeks from trial date) |
| Defendant's initial disclosure of witnesses to be called at trial | June 23, 2006 (12 weeks from trial date) |
| Deadline for resistances to dispositive motions | June 30, 2006 (11 weeks from trial date) |
| Deadline for depositions of plaintiffs' rebuttal experts | June 30, 2006 (11 weeks from trial date) |
| Deadline for replies to dispositive motions | July 14, 2006 (9 weeks from trial date) |
| Deadline for plaintiffs to make final disclosure of live witnesses | July 14, 2006 (9 weeks from trial |

2

|  |  |
|---|---|
|  | date) |
| Deadline for motions in limine | July 21, 2006 (8 weeks from trial date) |
| Hearing on dispositive motions | July 28, 2006 (7 weeks from trial date) |
| Deadline for completion of rulings by Special Master on trial exhibits and prior testimony designations | July 28, 2006 (7 weeks from trial date) |
| Deadline for defendants to make final disclosure of live witnesses | July 28, 2006 (7 weeks from trial date) |
| Deadline for resistances to motions in limine | August 4, 2006 (6 weeks from trial date) |
| Hearing on motions in limine | August 18, 2006 (4 weeks from trial date) |
| Submission of preliminary jury instructions | August 25, 2006 (3 weeks from trial date) |
| Final hearing on appeals of rulings by special master, objections to trial exhibits and prior testimony designations | September 1, 2006 (2 weeks from trial date) |
| Final pre-trial conference, hearing on preliminary jury instructions | September 8, 2006 (1 week from trial date) |
| Trial | September 18, 2006 |

All motions and other documents are to be served by hand, e-mail, fax, or by next-day delivery, unless the parties agree otherwise.

3

DATED this 7 day of July , 2005.

_____
Judge, District Court

Copies to:

Roxanne Barton Conlin
Roxanne Conlin & Associates, P.C.
600 Griffin Building
319 Seventh Street
Des Moines, Iowa 50309
Phone: (515) 282-3333
Fax: (515) 282-0318

Richard M. Hagstrom
Zelle, Hofmann, Voelbel, Mason & Gette LLP
500 Washington Avenue South
Suite 4000
Minneapolis, Minnesota 55415
Phone: (612) 339-2020
Fax: (612) 336-9100

Edward Remsburg
Ahlers & Cooney, P.C.
100 Court Avenue
Suite 600
Des Moines, IA 50309

David B. Tulchin
Joseph E. Neuhaus
Sharon L. Nelles
Sullivan & Cromwell
125 Broad Street
New York, New York 10004

Thomas W. Burt
Richard Wallis
Steven J. Aeschbacher
Microsoft Corporation
One Microsoft Way
Redmond, WA 98052

4

202578-2

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | | |
|---|---|---|
| JOE COMES and RILEY PAINT, INC., an Iowa corporation, | : | No. CL82311 |
| Plaintiffs, | : | |
| vs. | : | **RULING GRANTING PLAINTIFFS'** |
| | : | **MOTION FOR APPLICATION OF** |
| MICROSOFT CORPORATION, a | : | **COLLATERAL ESTOPPEL AGAINST** |
| Washington Corporation, | : | **MICROSOFT** |
| Defendants. | : | |

Plaintiffs' Motion for the Application of Collateral Estoppel Against Microsoft came before the Court for a hearing on October 21, 2004. The two certified Plaintiff Classes were represented by their attorneys, Roxanne Barton Conlin, Richard M. Hagstrom and Michael E. Jacobs. Microsoft was represented by its attorneys, David B. Tulchin, Joseph E. Neuhaus and Edward Reansberg. Based on all the files, records, pleadings, submissions and arguments of counsel, the Court enters the following Ruling.

## RULING

This Court previously observed that issues litigated and established in *United States v. Microsoft Corp.* were likely to be the subject of offensive collateral estoppel in this case. Class Certification Ruling, dated September 16, 2003, at 15. In this motion, Plaintiffs seek to bind Microsoft by the conclusion in the prior action that Microsoft had illegally monopolized the market for Intel-compatible personal computer ("PC") operating system in violation of the Iowa Competition Law, Iowa Code § 335.1 *et seq. See United States v. Microsoft Corp.*, 87 F. Supp. 2d 30, 54 (D.D.C. 2000) ("Conclusions of Law" *aff'd in part, rev'd in part, rem'd in part*, 253 F.3d 34, 46 (D.C. Cir. 2001). Plaintiffs also seek to bind Microsoft as to 352 (of 412) Findings



of Fact from the prior proceeding. *See United States v. Microsoft Corp.*, 84 F. Supp. 2d 9 (D.D.C. 1999) ("Findings of Fact").

The Iowa Supreme Court has set forth the prerequisites for invoking collateral estoppel. *See Hunter v. City of Des Moines*, 300 N.W.2d 121, 123-26 (Iowa 1981). Microsoft itself concedes that collateral estoppel (or issue preclusion) applies to the determination made in the government action. The only remaining question is the scope of this Court's collateral estoppel ruling. As set forth in more detail below, the Court concludes that Plaintiffs have demonstrated that the necessary prerequisites for collateral estoppel are satisfied for the legal and factual issues involved in this motion. Furthermore, the Court finds that Microsoft has not provided any convincing reason why it should be permitted to relitigate issues that were already resolved in the prior government action. Therefore, the Court **GRANTS** Plaintiffs' motion.

## STATEMENT OF FACTS

In May 1998, the United States and several states (including Iowa) filed related antitrust lawsuits against Microsoft. The government alleged that Microsoft had violated federal and state antitrust laws by engaging in an anticompetitive campaign to protect its Windows operating system monopoly from various emerging threats. According to the government, Microsoft believed that Netscape's Navigator web browser and Sun Microsystems' Java technologies, among others, would "commoditize" Microsoft's operating system monopoly. In response, Microsoft embarked upon a course of conduct to undermine those competitive threats.

Microsoft vigorously defended its conduct before the United States District Court for the District of Columbia. *See Microsoft*, 253 F.3d at 47. The trial in the government action began in October 1998 and lasted 76 days. The district court heard from 26 live witnesses and was presented with deposition excerpts from an additional 79 witnesses. The parties introduced over 2,700 exhibits into evidence. At the end of the evidence, Microsoft and the government each

2

provided the district court with proposed findings of fact based on the extensive evidence in the record. Microsoft's proposed findings alone numbered 1,512 paragraphs.

After "consider[ing] the record evidence submitted by the parties, ma[king] determinations as to its relevancy and materiality, [and] assess[ing] the credibility of the testimony of the witnesses," the district court issued its Findings of Fact in November 1999. Findings of Fact, 84 F. Supp. 2d at 12. The court made 412 Findings of Fact, which detailed (1) the scope of the relevant market at issue; (2) Microsoft's monopoly power in that market; and (3) Microsoft's willful maintenance of that power through exclusionary conduct, which harmed the competitive process and thereby consumers.

In April 2000, "[u]pon consideration of the...Findings of Fact," the district court concluded that Microsoft had violated federal and state antitrust laws, including the Iowa Competition Law. Conclusions of Law, 87 F. Supp. 2d at 35, 54. The district court held that Microsoft had (1) illegally monopolized the operating systems market by maintaining its monopoly power using anticompetitive and exclusionary means; (2) unlawfully attempted to monopolize the Web browser market; and (3) illegally tied its Internet Explorer Web browser to its monopoly Windows operating system. *See generally, id.* at 35-56.

On appeal, the United States Court of Appeals for the District of Columbia, sitting *banc*, affirmed the district court's conclusion that Microsoft had illegally monopolized the market for Intel-compatible PC operating systems in violation of federal and state antitrust laws. *Microsoft Corp.*, 253 F.3d at 46. On the other hand, the Court of Appeals reversed and remanded the district court's ruling with respect to the government's tying claim, and reversed the ruling with respect to the attempted monopolization claim in the putative web browser

3

market.   After the modifications to the district court's monopolization judgment, the following

legal conclusions survived intact:

> **1.    Microsoft Possessed Monopoly Power In The Market For The Licensing Of Intel-Compatible PC Operating Systems.**

- The relevant market is "'the licensing of all Intel-compatible PC operating systems worldwide,' [because] there are 'currently no products—and... there are not likely to be any in the near future—that a significant percentage of computer users worldwide could substitute for [these operating systems] without incurring substantial costs.'"*Microsoft*, 253 F.3d at 52.

- "[T]he proof of Microsoft's dominant, persistent market share protected by a substantial barrier to entry [namely, the "applications barrier to entry"], together with... the additional indicia of monopoly power, [demonstrate] that Microsoft enjoys monopoly power in the relevant market."  Conclusions of Law, 87 F. Supp. 2d at 35*, aff'd* 253 F.3d at 54-56.

> **2.    Microsoft Willfully Maintained Its Monopoly Power By Means Of An Anticompetitive Campaign Against Rival Developers.**

- Microsoft illegally bound its Internet Explorer ("IE") web browser to Windows with "technological shackles."  Microsoft "weld[ed] IE to Windows [by] excluding IE from the 'Add/Remove Programs' utility [in Windows 98]... and [by] commingling code related to browsing and other code in the same files, so that any attempt to delete the files containing IE would, at the same time, cripple the operating system."*Microsoft*, 253 F.3d at 64-65.  This conduct deterred original equipment manufacturers ("OEMs") (i.e., computer manufacturers such as Dell and Gateway) from installing a second browser (such as Navigator) and thus, "through something other than competition on the merits, ha[d] the effect of significantly reducing usage of rivals' products and hence protecting [Microsoft's] own operating system monopoly."  *Id.* at 65.

- Microsoft's license agreements illegally "prohibit[ed] the OEMs from: (1) removing any desktop icons, folders, or "Start" menu entries; (2) altering the initial boot sequence; and (3) otherwise altering the appearance of the Windows desktop.....  By preventing OEMs from removing visible means of user access to IE, the[se] license restrictions prevent[ed] many OEMs from pre-installing a rival browser (such as Navigator) and, therefore, protect[ed] Microsoft's monopoly from the competition that middleware might otherwise present....  Microsoft's prohibition on any alteration of the boot sequence... prevent[ed] OEMs from using that process to promote the services of Internet Access Providers

---

[1] The "applications barrier to entry" stems from two characteristics of the software market: (1) most consumers prefer operating system software for which a large number of applications have already been written; and (2) most developers prefer to write for operating systems that already have a substantial consumer base.  This "chicken-and-egg" situation ensures that applications will continue to be written for the already dominant Windows, which in turn ensures that consumers will continue to prefer it over other operating systems.  *Microsoft*, 253 F.3d at 55.

("IAPs"), many of which—at least at the time Microsoft imposed the restriction—used Navigator rather than IE in their internet access Software.... [thus] preventing OEMs from promoting rivals' browsers.... [Finally, Microsoft's prohibitions against OEMs]hiding icons or folders different in size or shape from those supplied by Microsoft, and from using the "Active Desktop" feature to promote third-party brands... impose[d] significant costs upon the OEMs... [and made them economically unable to promote rival browsers]." *Id.* at 61-62.

- Microsoft illegally used threats and incentives to induce especially important OEMs, such as Compaq, Gateway and IBM, to design their distributional, promotional and technical efforts to favor IE to the exclusion of Navigator. Conclusions of Law, 87 F. Supp. 2d at 39.

- Microsoft illegally entered into exclusionary agreements with major IAPs "to provide easy access to [their] services from the Windows desktop in return for the IAPs' agreement to promote [IE] exclusively and to keep shipments of internet access software using Navigator under a specified percentage."*Microsoft*, 253 F.3d at 68.  By ensuring that the "majority" of all IAPs' subscribers were offered IE (either as the default browser or as the only browser), Microsoft's agreements helped keep usage of Navigator below the critical level necessary for Navigator to provide a real threat to Microsoft's operating systems monopoly. *Id.* at 70-71.

- In dozens of exclusionary agreements (the so-called "First Wave" agreements), Microsoft illegally agreed to give certain Independent Software Vendors ("ISVs") "preferential support" in return for their agreement to "use Internet Explorer as the default browsing software for any software they develop with a hypertext-based user interface." The ISVs also agreed to use Microsoft's "HTML Help," which is only accessible with Internet Explorer, to implement their applications' help systems.*Id.* at 71-72.  Microsoft agreed to provide early Windows 98 and Windows NT "betas," other technical information, and the right to use certain Microsoft seals of approval, to important ISVs that agreed to Microsoft's terms, including the exclusion of rival browsers. *Id.* at 72.

- Microsoft entered into an illegal agreement with Apple Computer in which Microsoft agreed to release new versions of Office for the Macintosh platform in return for Apple's agreement to preinstall Internet Explorer and make IE the default browser on the Macintosh operating system. *Id.* at 72-74.  The agreement reduced the distribution of rival browsers, such as Navigator, on an important non-Microsoft platform, which in turn served to protect Microsoft's monopoly. *Id.* at 73-74.

- Microsoft illegally deceived Java developers about the "Windows-specific nature" of Microsoft's Java developer tools. *Id.* at 74, 76-77.  Microsoft's tools included certain "keywords" and "compiler directives" that could only be executed properly by Microsoft's version of Java.  Microsoft never informed Java developers that applications written using Microsoft's develop tools would only work on Windows.  As a result, even Java developers who wanted to write Java applications that could be used on competing operating systems ended up—without knowing it—writing applications that could only be used on Windows. *Id.* at 76.

5

- Microsoft illegally "coerc[ed] Intel to stop aiding Sun [Microsystems] in improving the Java technologies." *Id.* at 74, 77-78. Microsoft wanted Intel to abandon its efforts to develop a high performance Java virtual machine ("JVM") (software thatpermits programs written in Java to run on a computer) for Windows because a fast, cross-platform JVM would threaten Microsoft's monopoly in the operating system market. Microsoft threatened Intel that if it did not stop helping Sun, then Microsoft wouldrefuse to distribute Intel technologies bundled with Windows. Intel agreed to Microsoft's demands and ceased its development efforts. *Id.* at 74.

- In dozens of exclusionary "First Wave" agreements, Microsoft agreed to give ISVs access to Windows technical information in return for their agreement to use Microsoft's non-Sun compliant JVM as the default for their software. *Id.* at 74-76. These agreements had a significant effect upon JVM promotion since the products of First Wave ISVs reached millions of consumers. Moreover, when Netscape announced in May 1995 (prior to Microsoft's execution of the "First Wave" agreements) that it would include a Windows JVM that complied with Sun's standards with every copy of Navigator, it appeared that Sun's Java would be used widely on Windows. However, Microsoft undertook a number of anticompetitive actions that seriously reduced the distribution of Navigator, and thereby seriously reduced the distribution of Sun's JVM. Microsoft's agreements thus foreclosed a substantial portion of the field for Sun's JVM distribution and, in so doing, the agreements protected Microsoft's monopoly from the middleware threat posed by Java. *Id.* at 75-76.

In reviewing the district court's findings and conclusions on appeal, the D.C. Circuit engaged in a "painstaking" examination of the record, and refused to overturn any of the district court's 412 Findings of Fact as clearly erroneous. *Id.* at 118.

Following remand to the district court for remedies proceedings, Microsoft reached a settlement with the United States and nine plaintiff states. Iowa and eight other plaintiff states, however, rejected the proposed settlement and proceeded with the remedies trial. On November 1, 2002, the district court entered final judgments in both government actions. *New York v. Microsoft Corp.*, 224 F. Supp. 2d 76 (D.D.C. 2002); *United States v. Microsoft Corp.*, 231 F. Supp. 2d 144 (D.D.C. 2002). The Court of Appeals recently affirmed the final judgments. *Massachusetts v. Microsoft Corp.*, 373 F.3d 1199 (D.C. Cir. 2004).

## OTHER MICROSOFT COLLATERAL ESTOPPEL RULINGS

State courts in Arizona, California, Minnesota and Wisconsin have applied the doctrine of collateral estoppel to preclude Microsoft from relitigating issues that were decided in *United States v. Microsoft Corp. See Friedman v. Microsoft Corp.*, CV2000-000722 (Ariz. Sup. Ct. Maricopa Co. June 28, 2002); *Coordinated Proceedings Special Title (Rule 1550(b) Microsoft I-V Cases*, NO. J.C.C.P. No. 4106 (Cal. Sup. Ct. Oct. 10, 2000); *Gordon v. Microsoft Corp.*, No. MC 00-5994, 2003 WL 22281574 (Minn. Dist. Ct. Hennepin Co. Aug. 20, 2003); *Rapp v. Microsoft Corp.*, Case No. 00 CV 0637 (Wis. Cir. Ct. Dane Co. June 3, 2003). The district court in the MDL also applied collateral estoppel against Microsoft. *In re Microsoft Corp. Antitrust Litig.*, 232 F. Supp. 2d 534 (D. Md. 2002). On appeal, though, the Fourth Circuit reversed the lower court's ruling on the ground that the district court determined that collateral estoppel applied to any Findings of Fact from the government action that were "supportive of the judgment." The Fourth Circuit instructed the district court to reconsider its decision, applying the "necessary and essential" standard. *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322 (4th Cir. 2004). The Fourth Circuit did not, however, hold that application of collateral estoppel was inappropriate.

## STANDARD FOR APPLICATION OF COLLATERAL ESTOPPEL

Under the doctrine of collateral estoppel, a party may be precluded from relitigating legal or factual matters that were previously decided in an earlier judicial proceeding when (1) the issue decided in a prior proceeding is identical to an issue in the later action; (2) the issue was raised and litigated in the prior action; (3) the issue was material and relevant to the disposition of the earlier proceeding; and (4) the determination of the issue was necessary and essential to the resulting judgment. *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981);

*Gardner v. Hartford Ins. Acc. & Indemn. Co.*, 659 N.W.2d 198, 202 (Iowa 2003) (doctrine applies to issues of law or fact).

A litigant may seek to invoke the doctrine (offensively), even though she was not a party to the prior action, provided (1) the party to be precluded had a full and fair opportunity to litigate the issues in the first proceeding, and (2) precluding the party from relitigating those issues would not be unfair. *Hunter*, 300 N.W.2d at 124-26. A court has considerable discretion in allowing the doctrine to be used offensively. *Casey v. Koos*, 323 N.W.2d 193, 197 (Iowa 1982).

## DISCUSSION

Plaintiffs contend that all of the prerequisites for collateral estoppel are satisfied for each of the legal and factual issues present in their motion. Microsoft argues that Plaintiffs failed to satisfy their burden of demonstrating their entitlement to preclusion of 352 of the 412 Findings of Fact. While conceding that application of collateral estoppel (to some degree) is appropriate, Microsoft contends that *at most* 16 Findings of Fact encompassed by Plaintiffs' motion were "necessary and essential" to the judgment in the government action. The remaining Findings of Fact, Microsoft argues, were not necessary to the monopolization judgment and therefore should be open to relitigation. Microsoft also claims that applying collateral estoppel to the 352 Findings would be unfair because it would result in juror confusion. The Court disagrees with Microsoft and concludes that (1) Microsoft should not be permitted to contest any of the surviving legal conclusions (set forth above) from the government proceeding, and (2) Microsoft should not be allowed to challenge any of the 352 Findings of Fact the determination of which was necessary and essential to the prior judgment.

**A.     Issues In This Lawsuit Are Identical To The Issues In The Government Action.**

Having compared Plaintiffs' Petition with the district court's Findings of Fact and Conclusions of Law, and the Court of Appeals' decision in *United States v. Microsoft*, the Court concludes that the legal and factual issues that were decided in the government action are identical to issues raised in this lawsuit. The issues involved in both actions include: (1) the proper definition of the relevant antitrust market in which Microsoft licensed its Windows operating system software; (2) Microsoft's monopoly power in that market; (3) the conduct in which Microsoft engaged to preserve its monopoly power; (4) the exclusionary nature of Microsoft's conduct; (5) the harm caused to the competitive process, and thereby consumers, as a result of Microsoft's conduct; and (6) whether Microsoft's conduct, analyzed under the appropriate legal standards, violated the Iowa Competition Law. *See* Third Am. Petition ¶¶ 50-57, 90-101, 104, 110-112, 137-182. Microsoft does not dispute that the issues for which Plaintiffs seek preclusion from the government action are identical to issues in the present action.

**B.     The Issues For Which Plaintiffs Seek Preclusion Were Raised, Litigated And Determined In The Prior Proceeding.**

The Court concludes that each and every issue as to which Plaintiffs seek collateral estoppel was raised and litigated in the government action. As a general rule, when a question of fact is put in issue by the pleadings, is submitted to the trier of fact for its determination, and is determined, that question has been "actually litigated." 18 Moore's Federal Practice § 132.03[2][c] (Matthew Bender 3d ed.). Here, the Complaint in *United States v. Microsoft*, the parties' proposed factual findings, and—most importantly—the Findings of Fact made by the district court, all conclusively establish that those issues were "actually litigated." Microsoft does not dispute that the issues for which Plaintiffs seek preclusion were raised, litigated and determined in the government action.

9

**C.    The Issues For Which Plaintiffs Seek Preclusion Were Material And Relevant To The Prior Proceeding.**

The Court concludes that all of the issues for which preclusion is sought were material and relevant to the disposition in *United States v. Microsoft*. As Plaintiffs argued, all of the Findings of Fact at issue in this motion related to the government's allegations that Microsoft possessed monopoly power in a relevant market and that Microsoft engaged in certain illegal conduct. Moreover, the district court itself "made determinations as to [the] relevancy and materiality" of the record evidence before issuing the Findings of Fact. *See* Findings of Fact, 84 F. Supp. 2d at 12. Microsoft does not seriously dispute that the issues for which Plaintiffs seek preclusion satisfied this prerequisite.

**D.    The Conclusions Of Law And Findings Of Fact For Which Preclusion Is Sought Were Necessary And Essential To The Monopolization Judgment Against Microsoft.**

Having reviewed the Findings of Fact and Conclusions of Law, and the parties' arguments with respect to both, the Court concludes that all of the issues for which preclusion is sought were necessarily decided in the prior proceeding.

Microsoft does not strenuously contest the Conclusions of Law for which Plaintiffs' seek application of collateral estoppel. Rather, Microsoft provides an alternative description of those legal conclusions. The Court finds that the Conclusions of Law, as described by Plaintiffs and as set forth above, accurately describe the surviving conclusions from the prior proceeding.

The only prerequisite to collateral estoppel that Microsoft seriously disputes is whether certain factual issues were necessarily decided in the government action. Microsoft argues that "the vast majority" of the Findings of Fact were rendered unnecessary to the outcome by the D.C. Circuit's modification of district court's judgment against Microsoft. Microsoft further asserts that no more than 16 Findings of Fact were "necessary and essential" to the

10

monopolization judgment. The Court finds these arguments unpersuasive and concludes that the 352 Findings of Fact at issue in Plaintiffs' motion were "necessary and essential" to the judgment.

### 1. Legal Standard

When issues of law or fact were raised and litigated and were relevant to the prior proceeding, collateral estoppel precludes relitigation when the determination of those issues was also necessary and essential to the judgment in the earlier action. *Hunter*, 300 N.W.2d at 123; *Bickford v. American Interinsurance Exch.*, 224 N.W.2d 450, 455 (Iowa 1974). In order for preclusive effect to attach to an issue, the determination of the issue must be one upon which the judgment "rest[ed]." *Bickford*, 224 N.W.2d at 455; *see also* Restatement (Second) Judgments § 27, comment h (preclusive effect given to issues on which judgment was dependent). However, that does not mean preclusive effect can only be given to an issue if, standing alone, that issue would have been enough to render the judgment. Quite the contrary. Indeed, the Restatement notes that the preclusive effect of a prior finding does not turn on

> whether or not other links in the chain had to be forged before the question of liability could be determined.... [Instead, t]he appropriate question... is *whether the issue was actually recognized by the parties as important and by the trier as necessary to the first judgment. If so, the determination is conclusive between the parties....*

Restatement (Second) Judgments § 27, comment j (emphasis added); *see also* FEDERAL PRACTICE & PROCEDURE § 4421 ("Preclusion could be made available so long as it can be made apparent that real care was taken in litigating and deciding" the issue). In other words, "[a] finding is 'necessary' if it was central to the route that led the factfinder to the judgment reached, even if the result could have been achieved by a different, shorter, and more efficient route." *Hoult v. Hoult*, 157 F.3d 29, 32 (1st Cir. 1998) (citation and internal quotation marks omitted).

11

The Iowa Supreme Court's decisions in *Iowa Supreme Court Bd. of Prof'l Ethics & Conduct v. D.J.I.*, 545 N.W.2d 866 (Iowa 1996) and *Iowa Supreme Court Bd. of Prof'l Ethics & Conduct v. Isaacson*, 565 N.W.2d 315 (Iowa 1997) are particularly useful in understanding the meaning of the "necessary and essential" requirement. In *D.J.I.* the Supreme Court considered whether, in a disciplinary proceeding, the attorney/respondent was properly precluded from relitigating certain issues—including the attorney's breach of his duty of loyalty to his clients and his failure to avoid a conflict of interest, in violation of DR 5-104(A), DR 5-105(B) and DR 5-105(C)—that had been decided in a prior district court civil judgment against the attorney. *D.J.I.*, 545 N.W.2d at 870.  The attorney/respondent argued that these issues were not "necessary and essential" to the outcome in the prior proceeding, but the Supreme Court disagreed.

In the prior civil action, the clients raised the disciplinary code violations in order to prove their civil fraud and legal malpractice case against the attorney. *Id.* at 875.  In concluding that those findings were necessarily determined in the prior proceeding, the Supreme Court held that "[p]roof of respondent's violation of the code of professional responsibility was a crucial aspect of [the clients'] previous civil fraud... case against respondent" in that it was used to satisfy one of the elements of the claim.  *Id.* at 875.  The Supreme Court observed:

> To prove respondent committed fraud against them, [the clients] were required to prove scienter.  A party may... attempt to prove scienter by introducing evidence that the attorney violated certain duties set forth in the code of professional responsibility....  As we stated in [a prior decision], plaintiff's "reliance on the code of professional responsibility ... may be helpful to [an] assertion that [the attorney] was under a duty to disclose all material facts within his [or her] knowledge regarding the [investment at issue]."

*Id.* at 875-76 (internal citations omitted).  The Court continued:

> In the district court's judgment in the fraud litigation pursued by [the clients] against respondent, the court held that [the clients] met their burden of proof on the scienter requirement of the fraud claim.  Proof of this element was based on [the clients'] allegations that respondent violated the code of professional responsibility.

12

*Id.* at 876 (emphasis added).

In *Isaacson*, the Supreme Court again held that collateral estoppel applied to the factual findings and legal conclusions in the prior proceeding. Following the decision in *D.J.I.*, the grievance commission permitted the attorney/respondent to proffer evidence that "contradicted facts found by the district court in the fraud case, as well as evidence aimed at mitigating his involvement." *Isaacson*, 565 N.W.2d at 316. Despite the prior adjudication of fraud and misrepresentation, the grievance commission "concluded that most of the alleged violations had not actually been proven" and but for issue preclusion, would not even have given Isaacson a private reprimand. *Id.* (emphasis added). On appeal, the Supreme Court concluded that the commission improperly substituted its own judgment for that of the district court in the fraud proceeding. The Supreme Court examined the factual findings from the prior district court proceeding—which Isaacson was precluded from relitigating—and concluded, based on those findings, that the private reprimand was an insufficient sanction. Despite Isaacson's "attempts to mitigate his responsibility," the Court concluded that the preclusive findings of fraud and misrepresentation required suspension of Isaacson's license to practice law. *Id.* at 317-18.

Considering *D.J.I.* and *Isaacson*, the Court concludes that preclusion applies to all factual and legal issues that were raised and litigated in the prior proceeding and that were the proper basis for the prior tribunal's determination that the elements of a claim were satisfied. This Court, like the grievance commission, is not permitted to second guess the prior, final factual and legal determinations. Accordingly, Microsoft will not be permitted to relitigate or attempt to mitigate those prior Findings of Fact and Conclusions of Law that were necessary and essential to the judgment.

## 2. Findings of Fact That Were Necessary and Essential

Having concluded that the first three prerequisites of collateral estoppel are satisfied, the Court next analyzes what was "necessary and essential" to the determination of the prior monopolization judgment using *D.J.I.* and *Isaacson* as a guide. This analysis begins with the legal standard for a monopolization claim as used by the Court of Appeals for the D.C. Circuit.

> The offense of monopolization has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.

*Microsoft*, 253 F.3d at 50 (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)). Thus, a firm illegally monopolizes "when it acquires or maintains... a monopoly by engaging in exclusionary conduct...." *Id.* at 58.

Monopoly power is defined as "the power to control prices or exclude competition." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956). Monopoly power can be demonstrated through either direct evidence or indirect evidence, or both:

> Where evidence indicates that a firm has in fact profitably [raised prices above the competitive level], the existence of monopoly power is clear. Because such direct proof is only rarely available, courts more typically examine market structure in search of circumstantial evidence of monopoly power. Under this structural approach, monopoly power may be inferred from a firm's possession of a dominant share of a relevant market that is protected by entry barriers. "Entry barriers" are factors (such as certain regulatory requirements) that prevent new rivals from timely responding to an increase in price above the competitive level.

*Microsoft*, 253 F.3d at 51 (citations omitted). A structural approach to determining market power demands that a proper "relevant market" be defined in the first instance. Defining a relevant market in turn requires the identification of products that are "reasonably interchangeable by consumers for the same purposes," because it is "the ability of consumers to turn to other suppliers [that] restrains a firm from raising prices above the competitive level." *Id.* at 51-52.

14

Determining that monopoly power was willfully acquired or maintained through exclusionary conduct (as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident) involves several steps:

- First, to be condemned as exclusionary, a monopolist's conduct must have an "anticompetitive effect." That is, the conduct must harm the competitive *process* and thereby harm consumers. *Id.* at 58. Therefore, an antitrust plaintiff, upon whom the burden of proof rests, must demonstrate that the monopolist's conduct had the requisite effect on the competitive process. *Id.* at 58-59.

- Second, if the plaintiff establishes a *prima facie* case by demonstrating anticompetitive effect, the defendant may proffer a "procompetitive justification" for its conduct. *Id.* at 59. If the defendant asserts a non-pretextual claim that its conduct was a form of competition on the merits (because it involved, for example, greater efficiency or enhanced consumer appeal), then the burden shifts back to the plaintiff to rebut that claim. *Id.*

- Third, if the monopolist's procompetitive justification stands unrebutted, the plaintiff must demonstrate that the anticompetitive harm resulting from the challenged conduct outweighs the procompetitive benefit. *Id.* In considering whether the monopolist's conduct on balance harmed competition and should therefore be condemned as exclusionary, the focus is on the effect of the conduct, and evidence of the monopolist's intent may help understand the likely effect of the conduct. *Id.*

In arguing for the preclusive effect of 352 Findings of Fact (along with the various legal conclusions recited above), Plaintiffs demonstrated that those issues were the basis on which the district court's monopolization judgment (as modified by the Court of Appeals) depended. For each of the Findings of Fact, Plaintiffs demonstrated how the issue was central to the analysis necessarily undertaken by the district court in concluding that the elements of a monopolization claim had been satisfied. Plaintiffs also demonstrated how—among the relevant issues that were litigated and determined in the prior proceeding—60 Findings of Fact *only* related to one of the unsuccessful claims (or portions of a claim), and therefore were not *necessarily* decided. The Court is satisfied that such Findings (namely Findings of Fact ¶¶ 136-142, 171-172, 199-201, 211, 224-227, 246-252, 259-260, 295, 311-336, 379-385) properly have been excluded from Plaintiffs' motion.

Plaintiffs have argued that, in similar motions elsewhere, Microsoft conceded—explicitly or implicitly—that 266 of the Findings of Fact at issue in this motion were subject to collateral estoppel. Microsoft responds that its so-called "concessions" were merely tactical decisions and therefore Microsoft should not be bound by those concessions. Whether or not Microsoft can be bound by those statements, the Court finds that Plaintiffs have demonstrated, in Appendix A to their opening memorandum, how those 266 Findings of Fact were central to the district court's determination that the elements of a monopolization claim had been satisfied. Microsoft has not provided any persuasive response to Plaintiffs' showing.[2]

As for the remaining Findings of Fact for which Microsoft provides a response, the Court concludes those Findings were necessary and essential to the judgment. Uniformly, these Findings demonstrate Microsoft's exclusionary conduct, its ability to exclude competition, and the harm to the competitive process and thereby consumers all of which are elements of the monopolization determination.

## Finding of Fact ¶ 78:

This Finding describes Microsoft's concern that various forms of middleware (Lotus' Notes, Intel's Native Signal Processing software, and Apple's and RealNetworks' multimedia playback technologies) would weaken the applications barrier to entry. Microsoft contends that the Finding is not subject to preclusion because it has no relevance to any of the twelve acts found to be anticompetitive by the Court of Appeals. The Court disagrees. This Finding reflects Microsoft's understanding that certain middleware threatened the applications barrier to entry

---

[2] The 266 Findings of Fact (as well as the 86 Findings that Microsoft had not previously conceded) were necessary and essential to the elements of the government's monopolization claim against Microsoft. The 266 Findings include (1) defined terms used throughout the Findings and necessary factual background (¶¶ 1-17); (2) the relevant market analysis (¶¶ 18-32); (3) analysis (under both structural and behavioral approaches) of Microsoft's power in the relevant market including Microsoft's market share (¶¶ 33-35), the applications barrier to entry (¶¶ 36-52), alternatives to Windows (¶¶ 53-56) and Microsoft's ability to charge supra-competitive prices (¶¶ 57-67). The Findings then proceed with the analysis approved by the D.C. Circuit to examine Microsoft's exclusionary conduct and its effect on competition including: (1) the nature of the threats to Microsoft's monopoly power (¶¶ 68-77, 133-35); (2) Microsoft's monopolization through exclusionary conduct (¶¶ 143-148, 156-170, 194, 202-210, 212-223, 242-245, 253-258, 261-291, 296, 302, 304-308, 337-356, 359-361, 376-378, 386-388, 394-396, 399-401, 404-407); (3) the lack of a pro-competitive justification for Microsoft's exclusionary conduct (¶¶ 179-195, 228-229); and (4) the conclusion that Microsoft's conduct caused harm to the competitive process (¶¶ 194-198, 214, 217, 239-240, 291, 298, 303-304, 306, 308-310, 356-378, 407).

protecting Microsoft's operating systems monopoly, and evidences Microsoft's intent to protect that barrier. *See* Conclusions of Law, 87 F. Supp. 2d at 39 ("the desire to preserve the applications barrier to entry" was the inspiration for "Microsoft's efforts to induce Intel, Apple, RealNetworks and IBM to desist from certain technological innovations"). Thus, Finding of Fact ¶ 78 provided a proper foundation for the district court to conclude that Microsoft's conduct was anticompetitive. *Chicago Bd. of Trade v. United States*, 246 U.S. 231, 238, 38 S. Ct. 242, 244, 62 L. Ed. 683 (1918) ("[K]nowledge of intent may help the court to interpret facts and to predict consequences.").

### Findings of Fact ¶¶ 79-89:

These Findings describe Microsoft's ultimately unsuccessful efforts to convince Netscape to divide the market for web browsing software. Microsoft contends that these issues are not subject to preclusion because the Court of Appeals did not mention Microsoft's market-division proposal and reversed the district court's imposition of § 2 liability for attempted monopolization. However, while these Findings related, in part, to the attempted monopolization claim, the Court agrees with Plaintiffs that the district court also relied upon them to conclude that Microsoft's anti-Netscape conduct was driven by the intent to protect the applications barrier to entry. *See* Conclusions of Law, 87 F. Supp. 2d at 39 ("This proposal ... illuminates the context in which Microsoft's subsequent behavior... must be viewed"). Thus, these Findings provided a proper foundation for the district court to conclude that Microsoft's anti-Netscape conduct was anticompetitive. *Chicago Bd. of Trade*, 246 U.S. at 238, 38 S. Ct. at 244.

### Findings of Fact ¶¶ 90-92:

These Findings describe how Microsoft withheld "critical technical information and assistance" from Netscape in retaliation for Netscape's refusal taccede to Microsoft's market-division proposal, thereby causing Netscape to postpone its release of a Windows 95 browser until "substantially after" Microsoft's release of Windows 95 and Internet Explorer. Microsoft contends that these Findings are not subject to preclusion because they are unrelated to any of the twelve acts held to be anticompetitive by the Court of Appeals. The Court agrees with Plaintiffs that the district court relied upon these Findings to conclude that Microsoft's anti-Netscape conduct was exclusionary. *See* Conclusions of Law, 87 F. Supp. 2d at 39 ("[T]he punitive measures that Microsoft inflicted on Netscape when it rebuffed [Microsoft's] overtures, illuminates the context in which Microsoft's subsequent behavior... must be viewed"). Thus, they properly provided a foundation for the district court's monopolization judgment.*Chicago Bd. of Trade*, 246 U.S. at 238, 38 S. Ct. at 244. These Findings also reflect Microsoft's monopoly power, as they demonstrate the company's ability to exclude competition.

### Findings of Fact ¶¶ 93-132:

These Findings describe Microsoft's "corporate practice to pressure [Intel, Apple, RealNetworks and IBM] to halt software development that either shows the potential to weaken the applications barrier to entry or competes directly with Microsoft's most cherished software products." Finding of Fact ¶ 93. Microsoft contends that the Findings are subject to relitigation because the district court did not specifically cite them in connection with its market power conclusion, and because the Court of Appeals did not refer to Intel's Native Signal Processing

17

("NSP"), Apple's QuickTime, RealNetworks or IBM's SmartSuite in its opinion.  Nevertheless, these Findings reflect Microsoft's understanding that certain middleware threatened to undermine Microsoft's applications barrier to entry protecting Microsoft's operating systems monopoly, and therefore evidence Microsoft's intent to protect that barrier. *See* Conclusions of Law, 87 F. Supp. 2d at 39 ("the desire to preserve the applications barrier to entry" was the inspiration for "Microsoft's efforts to induce Intel, Apple, RealNetworks and IBM to desist from certain technological innovations").  Thus, these Findings provided a proper foundation for the district court to conclude that Microsoft's conduct was anticompetitive. *Chicago Bd. of Trade*, 246 U.S. at 238, 38 S. Ct. at 244.  Moreover, these Findings also were necessary to the district court's "behavioral approach" analysis of Microsoft's monopoly power.  Notwithstanding the explicit reference to only one of these Findings, the Court concludes, based on the record, that the district court relied upon all of the Findings to determine that Microsoft enjoyed monopoly power.  *See* Findings of Fact ¶ 67, 84 F. Supp. 2d at 28 ("Microsoft's monopoly power is also evidenced by the fact that, over the course of several years, Microsoft took actions that could only have been advantageous if they operated to reinforce monopoly power.  These actions are described below.").

**Findings of Fact ¶¶ 149-155:**

These Findings develop the economic and functional role of web browsers as separate from the operating system.  Microsoft contends that the Findings should be subject to relitigation because they related only to the Section 1 tying violation, which the Court of Appeals vacated.  Microsoft also argues that, on remand, the district court rejected a proposed remedy based on Finding of Fact ¶ 155 (describing Microsoft's refusal to license a browserless operating system and its imposition of contractual and technical limitations on the ability to remove IE from Windows) because the finding "was unconnected to any liability determination upheld by the Court of Appeals." *See id.* at 38.  While these Findings related to the tying claim, both Microsoft and the Court of Appeals noted the "substantial[] overlap" between the facts that were the basis for the tying claim and the facts on which the monopolization claim was based.  Microsoft's Appeal Brief ("App. Br.") at 66; *Microsoft*, 253 F.3d at 84.  These Findings are a necessary predicate for the conclusion that Microsoft's technological integration of Internet Explorer with Windows—specifically, its decision to exclude Internet Explorer from the Windows Add/Remove programs utility and its commingling of the Internet Explorer browser and operating systems Windows code—was anticompetitive.  With respect to Finding of Fact ¶ 155, the district court, on remand, simply stated that certain Findings, "*standing alone and unconnected to specific liability findings, cannot be utilized to justify specific remedial provisions*." *Microsoft*, 224 F. Supp. 2d at 138 (emphasis added).  A Finding is not subject to relitigation merely because, standing alone, it might not have been the basis for a particular proposed remedy.

**Findings of Fact ¶¶ 230-238:**

These Findings describe Microsoft's use of incentives and threats to coerce OEMs to promote Internet Explorer and to not install Netscape's Navigator.  Microsoft contends that these Findings are subject to relitigation because they are not connected to any of the acts deemed anticompetitive by the Court of Appeals.  However, the district court assigned liability for Microsoft's use of incentives and threats to induce "especially important" OEMs to favor

Internet Explorer to the exclusion of Navigator. While the D.C. Circuit did not specifically address this conduct, the Court of Appeals stated that it would not set aside any Conclusions of Law, unless incorrect. *Microsoft*, 253 F.3d at 116. On remand, the district court rejected Microsoft's argument that the Court of Appeals implicitly reversed findings of anticompetitive conduct not discussed in the Court of Appeals decision, including the "finding of liability based upon the 'threats and incentives' described in Findings of Fact ¶¶ 230-38. *Microsoft*, 224 F. Supp. 2d at 99.

### Findings of Fact ¶¶ 389-393:

These Findings account how key Microsoft executives became aware that many developers were writing network-centric applications in the Java programming language, and how Microsoft in response developed a Java implementation for Windows that undermined cross-platform portability (i.e. compatible with more than one operating system) and was incompatible with other Java implementations. Microsoft contends that it should be permitted to relitigate all of these issues because the Court of Appeals reversed the district court's imposition of liability for Microsoft's development of an incompatible JVM. This Court disagrees. These Findings provide the necessary foundation for the conclusion that (1) Microsoft's First Wave agreements (requiring ISVs to promote exclusively Microsoft's JVM in order to obtain technical support from Microsoft) and (2) its deception of Java developers were anticompetitive and unlawfully maintained Microsoft's monopoly power. Without Findings that Microsoft developed an incompatible JVM, the district court could not have concluded that Microsoft's efforts to deceive Java developers or to distribute Microsoft's JVM in place of Sun's had any effect on competition. These Findings are not subject to relitigation simply because "other links in the chain had to be forged before the question of liability could be determined. See Restatement (Second) Judgments § 27, comment j.

### Findings of Fact ¶¶ 397-398:

These Findings describe how, as a result of its success in "maximiz[ing] the usage of Internet Explorer at Navigator's expense," Microsoft was able to eliminate Navigator as a distribution mechanism for Sun's Java, and how Microsoft guaranteed the presence of its JVM on every Windows PC by bundling it with Internet Explorer. Microsoft contends that these Findings should be open to relitigation because the Court of Appeals did not assign liability for Microsoft's inclusion of its JVM with every copy of Internet Explorer. However, these Findings provide the necessary foundation for the conclusion that Microsoft's conduct had the requisite anticompetitive effects. The Court of Appeals noted that "Microsoft's exclusive deals with the leading ISVs took place against a backdrop of foreclosure." *Microsoft*, 253 F.3d at 75. In other words, the analysis of impact was dependent on these Findings. The Findings are not subject to relitigation simply because "other links in the chain had to be forged before the question of liability could be determined." *See* Restatement (Second) Judgments § 27, comment j.

### Findings of Fact ¶¶ 402-403:

These Findings describe an agreement with an ISV "to redistribute Microsoft's JVM to the exclusion of any other," and an agreement with RealNetworks to limit the extent to which its multimedia software "would include Java technologies that complied with Sun's standards."

Microsoft contends that these agreements are not subject to preclusion because the "First Wave" agreements were the only Java-related agreements that were found to be anticompetitive by the Court of Appeals. Nevertheless, because these agreements had the same exclusionary purpose and effect as the "First Wave" agreements—explicitly requiring the redistribution of Microsoft's JVM to the exclusion of Sun's JVM—the district court included them in its assignment of liability for Java-related agreements. *See* Conclusions of Law, 87 F. Supp. 2d at 43-44. Thus, the Court of Appeals, in affirming the district court's conclusion with respect to the "First Wave" agreements, undoubtedly included these two agreements as well. In any event, even if the D.C. Circuit did not implicitly include these agreements, the Court of Appeals stated that it would not set aside any Conclusions of Law, unless incorrect. *Microsoft*, 253 F.3d at 116. On remand, the district court rejected Microsoft's argument that the Court of Appeals implicitly reversed findings of anticompetitive conduct not discussed in the Court of Appeals decision. *Microsoft*, 224 F. Supp. 2d at 98-99. Thus, the district court's assignment of liability on these related agreements survived appeal.

### Findings of Fact ¶¶ 408-412:

Microsoft contends that these Findings, describing the harm Microsoft inflicted on consumers as a result of its wide-ranging and successful efforts to protect the applications barrier to entry, are not subject to preclusion because "[n]either the district court nor the Court of Appeals ascribed liability based on these findings." Microsoft Memo. at 42. Harm to competition, of course, is a required showing in a monopolization claim. *See Microsoft*, 253 F.3d at 58. These Findings were included in a section of the Findings of Fact entitled "The Effect of Microsoft's Efforts to Protect the Applications Barrier to Entry." Thus, the record clearly demonstrates that these determinations were properly relied upon to conclude that Microsoft's conduct had the requisite anticompetitive effects.

### 3. Microsoft's Alternative Approach To Collateral Estoppel.

Microsoft contends that the determination of no more than 16 (out of 412) Findings of Fact from the government action was "necessary and essential." The corollary to Microsoft's argument that at least 396 Findings are open to relitigation is that the monopolization judgment would be sustainable if the district court decided *only* the 16 Findings that Microsoft claims were "necessary and essential." In other words, Microsoft implies that the 16 Findings alone were sufficient to satisfy all of the elements of the monopolization claim. As the D.C. Circuit observed, however, proving monopolization "require[s] evidentiary and theoretical rigor." *Microsoft*, 253 F.3d at 84. The Court believes Microsoft's approach to collateral estoppel is inconsistent with the analysis—described above—required in an antitrust case.

20

For example, Microsoft implicitly claims that the relevant market element of the monopolization ruling would have been upheld had the district court simply made Finding ¶ 18, and not engaged in any further analysis with respect to its definition of the market as Intel-compatible PC operating systems. Finding ¶ 18, though, simply reiterates the functional definition of a relevant market and then concludes that "in determining the level of Microsoft's market power, the relevant market is the licensing of all Intel-compatible PC operating systems worldwide." Findings of Fact ¶ 18, 84 F. Supp. 2d at 14. In and of itself, the Finding is conclusory.

The D.C. Circuit's opinion, in reversing the attempted monopolization ruling in the alleged *web browser* market, undermines Microsoft's position that only Finding ¶ 18 was "necessary and essential":

> Defining a market for an attempted monopolization claim involves the same steps as defining a market for a monopoly maintenance claim, namely a detailed description of the purpose of a browser—what functions may be included and what are not—and an examination of the substitutes that are part of the market and those that are not. *The District Court never engaged in such an analysis nor entered detailed findings defining what a browser is or what products might constitute substitutes....*

*Microsoft*, 253 F.3d at 81 (emphasis added). Indeed, the district court had entered a single, conclusory finding on the *web browser* market. Finding of Fact ¶ 150. 84 F. Supp.2d at 48. The D.C. Circuit then noted that the actual findings on the *web browser* market "pale in comparison" to the finding of relevant market "on the monopoly maintenance claim." *Microsoft*, 253 F.3d at 82 (citing Findings of Fact ¶¶ 18-66 as necessary to the relevant market analysis in the monopoly maintenance claim).

Based on the D.C. Circuit's analysis, the Court concludes that, had the district court similarly foregone such an analysis for the *operating systems market*, and simply made Finding ¶ 18, the monopolization claim would have been reversed as was the attempted monopolization

21

claim.   Because an antitrust claim requires "evidentiary and theoretical rigor," 253 F.3d at 84, Microsoft's assertion that only 16 Findings of Fact were necessary and essential is rejected. Rather, a successful claim is premised on evidentiary facts which prove the elements of a cause of action, including the exclusionary conduct—the who, what, where, when, why, and how.   The evidentiary facts for which Plaintiffs seek collateral estoppel are set forth in the 352 Findings which Microsoft is precluded from relitigating, or attempting to mitigate.

**E.     Microsoft Was Provided A Full And Fair Opportunity To Litigate Each And Every Issue In The Government Action.**

Collateral estoppel is available when a party was provided an *opportunity* to fully and fairly litigate an issue in a prior proceeding. *Gardner*, 659 N.W.2d at 203; *see also* Restatement (Second) Judgments § 29.   Microsoft was provided ample opportunity to fully and fairly litigate each and every legal and factual issue in the prior proceeding, and the Court believes that Microsoft availed itself of that opportunity.   Microsoft never contested this point, and with good reason.

As set forth above, the prior government action was a lengthy and involved process. Microsoft not only had ample opportunity to contest every issue, it had every incentive to do so. Microsoft realized the government plaintiffs might seek a break-up of the company if they prevailed. *See Microsoft*, 253 F.3d at 47.   Microsoft also certainly recognized that plaintiffs in private antitrust lawsuits, based in whole or in part on the government case, would seek to use the outcome of the government action in their cases. *See id.* at 49 (private antitrust enforcement available "to deter those firms inclined to test the limits of the law").   Microsoft therefore vigorously contested the government's claims and the facts on which those claims were based.

22

**F.    No "Compelling" Circumstances Justify Affording Microsoft An Opportunity To Relitigate Issues That Were Decided In The Government Action.**

Having found that the requirements for collateral estoppel are satisfied with respect to the legal conclusions and Findings of Fact at issue in Plaintiffs' motion, the Court is faced with the question whether Microsoft nevertheless should be permitted to relitigate any of those legal conclusions or Findings in the interests of fairness.  The Court concludes that it should not.

Section 29 of the Restatement sets forth various circumstances in which relitigation of an issue that was resolved in a prior proceeding might be permitted.  The unifying thread running through any of the "compelling" circumstances that might justify relitigation of a previously-decided issue is that "a party should not be precluded unless his previous opportunity was at least the equivalent of that otherwise awaiting him in the present litigation."  Restatement (Second) Judgments § 29, comment b.

As discussed above, the Court has concluded that Microsoft was provided a full and fair opportunity to litigate each and every issue in *United States v. Microsoft*.  Moreover, after reviewing the circumstances set forth in Section 29 of the Restatement, the Court concludes that Microsoft has not shown any valid reason why it should be permitted to relitigate the outcome of the government action in this forum:

- First, the Court finds that treating issues from the government action as conclusively determined here would not be incompatible with the remedial scheme under the Iowa Competition Law.  Restatement (Second) Judgments § 29(1).  Indeed, the Iowa Competition Law specifically contemplates that private plaintiffs should be able to take advantage of prior antitrust proceedings brought by the State of Iowa.  *See* Iowa Code § 553.17.  Microsoft has not argued to the contrary.

- Second, the Court concludes that Federal Rules of Civil Procedure afforded Microsoft the same procedural opportunities to present its defenses as the Iowa Rules would permit in this forum. *Id.* § 29(2); *see Vos v. Farm Bureau Life Ins. Co.*, 667 N.W.2d 36, 44 (Iowa 2003) (because of similarities, Iowa Rules may be interpreted consistently with the Federal Rules of Civil Procedure).  Whatever differences might exist, they are certainly not of the kind that would likely result in any issue from the government action being differently determined here.  Microsoft has not argued to the contrary.

23

- Third, Plaintiffs in this action could not have joined the government action. Microsoft has not argued to the contrary. *Id.* § 29(3).

- Fourth, the Court determines that the Findings of Fact and legal conclusions from the government action are not inconsistent with any other determinations of the same issues. *Id.* § 29(4). Microsoft has not argued to the contrary.

- Fifth, the Court concludes that the prior determination was not affected by relationships between Microsoft and the government plaintiffs that are not present in this action. *Id.* § 29(5). The government plaintiffs and Microsoft were vigorous adversaries during the liability trial. Furthermore, nothing suggests the prior judgment was based on a compromise verdict or finding. Microsoft has not argued to the contrary.

- Sixth, invoking collateral estoppel here will not complicate the determination of any issues in this action. Microsoft argues that presenting 352 Findings of Fact to the jury would result in juror confusion. *Id.* § 29(6). As Microsoft recognized in *California*, however, "the formatting and presentation of findings to the jury.... will be addressed *after* this Court has decided which findings are necessary" to the prior judgment. Microsoft's "juror confusion" argument misconstrues this consideration, which addresses confusion that might result from not allowing the *relitigation* of certain issues (not how the determination of those issues is presented to the jury). Microsoft presents no argument that precluding it from relitigating issues that were decided in the prior proceeding would complicate the determination of any issues in this action.[3]

- Seventh, the Court concludes that giving preclusive effect to the outcome from the government action would not inappropriately foreclose the reconsideration of any legal rule. *Id.* § 29(7). The United States District Court and the United States Court of Appeals for the District of Columbia Circuit both concluded that Microsoft's conduct violated the Iowa Competition Law. Microsoft has not argued to the contrary.

- Eighth, and finally, the Court finds that no other "compelling circumstances" exist that would make relitigation of the Findings of Fact appropriate. *Id.* § 29(8).

In sum, the Court concludes that Microsoft's opportunity in *United States v. Microsoft Corp.* to litigate the legal significance of its conduct was at least the equivalent of that otherwise awaiting Microsoft in the present litigation. Consequently, precluding Microsoft from contesting

---

[3] Similarly, Microsoft raises "confusion" issues stemming from differences between this case and the prior government action (e.g., different time periods involved and the inclusion of applications software in this action that was not involved in the government case). The Court believes that all of these issues can be addressed through proper jury instruction. Again, the Court concludes that these issues do not justify allowing Microsoft to relitigate the Findings of Fact that were "necessary and essential" to the prior judgment.

its liability, and the 352 Findings of Fact which were determinative of that liability, is entirely appropriate.

**C.   Iowa Public Policy Favors Allowing Private Plaintiffs To Benefit From Prior Government Enforcement Actions.**

Allowing Microsoft to relitigate the government action in this forum would result in a tremendous waste of judicial resources.  It would also deny Plaintiffs the benefits accorded under longstanding Iowa public policy:

> Application of the doctrine of collateral estoppel represents a decision that the needs of judicial finality and efficiency outweigh the possible gains of fairness or accuracy from continued litigation of an issue that previously has been considered by a competent tribunal.

*D.J.L.*, 545 N.W.2d at 873 (quoting *Nasem v. Brown*, 595 F.2d 801, 806 (D.C. Cir. 1979)).

The Iowa Competition Law specifically contemplates that Plaintiffs will be able to utilize findings and conclusions from antitrust enforcement actions brought by the State of Iowa, such as the prior proceeding involving Microsoft. *See* Iowa Code § 553.17.  The Iowa Supreme Court recently reiterated this state's long-standing policy favoring the vigorous enforcement of its antitrust laws. *Comes v. Microsoft Corp.*, 646 N.W.2d 445, 446 (Iowa 2002) (citing *Meyers v. Roth*, 326 N.W.2d 294, 297 (Iowa 1982)).  Granting private litigants the full benefits of collateral estoppel is a critical component of that policy.  Thus, precluding Microsoft from relitigating all issues that were necessarily determined in *United States v. Microsoft Corp.* is consistent with the public policy of this state.

## CONCLUSION

The United States District Court for the District of Columbia and the United States Court of Appeals for the District of Columbia Circuit both concluded that Microsoft violated the Iowa Competition Law, Iowa Code § 553.1*et seq.*, based on conduct that is also at issue in this action. Microsoft was provided a full and fair opportunity to litigate each and every issue of law and fact

25

in that proceeding.    Therefore, the Court finds there is no reason to permit Microsoft to contest the Findings of Fact and legal conclusions at issue in this motion.

Accordingly, the Court finds that Microsoft should be bound in this forum by the outcome of *United States v. Microsoft Corp.*, including the Conclusions of Law set forth above and the following Findings of Fact: 1-135, 143-170, 173-198, 202-210, 212-223, 228-245, 253-258, 261-294, 296-310, 337-378, 386-412.

IT IS SO ORDERED THIS *17th* DAY OF *Dec* , 2004

_____
Artis I. Reis, Judge
Fifth Judicial District of Iowa

# IN THE SUPREME COURT OF IOWA

JOE COMES and RILEY PAINT,   :   Polk County No. CL82311
INC., an Iowa corporation,   :

       Plaintiffs,   :

  :

vs.   :

  :

MICROSOFT CORPORATION,   :
a Washington corporation,   :

  :

       Defendant.   :

---

## MICROSOFT'S APPLICATION FOR LEAVE TO APPEAL THE DISTRICT COURT'S DECEMBER 17, 2004 RULING ON COLLATERAL ESTOPPEL

Pursuant to Rule 6.2 of the Iowa Rules of Appellate Procedure, defendant Microsoft Corporation respectfully seeks leave to appeal from the District Court's December 17, 2004 Ruling Granting Plaintiffs' Motion for Application of Collateral Estoppel Against Microsoft. In support of its application, Microsoft states as follows:

1.    This is a class action on behalf of all Iowa citizens who, on or after May 18, 1994, were indirect purchasers of Microsoft operating system, word processing and spreadsheet software, seeking damages for Microsoft's alleged violation of the Iowa Competition Law, Iowa Code § 553.1 *et seq.*

2.    On July 12, 2004, plaintiffs filed a motion seeking to preclude Microsoft, under the doctrine of collateral estoppel, from challenging hundreds of findings of fact made by the trial court in *United States v. Microsoft Corp.*, 84 F. Supp. 2d 9 (D.D.C.



1999) (findings of fact) (the "Government Case"). The trial court's decision in the Government Case (*see also* 87 F. Supp. 2d 30 (D.D.C. 2000) (conclusions of law)), was in large part overturned on appeal by the Court of Appeals for the D.C. Circuit, *United States v. Microsoft Corp.*, 253 F.3d 34, 105 (D.C. Cir.) ("This court has drastically altered the District Court's conclusions on liability."), *cert. denied*, 534 U.S. 952 (2001), *on remand and final judgment sub nom. New York v. Microsoft Corp.*, 224 F. Supp. 2d 76 (D.D.C. 2002), *aff'd sub nom. Massachusetts v. Microsoft Corp.*, 373 F.3d 1199 (D.C. Cir. 2004).

3.      Despite the fact that the trial court's judgment in the Government Case was "drastically altered on appeal," the Iowa District Court for Polk County granted plaintiffs' motion, giving preclusive effect to 352 of the 412 findings of fact made by the trial court in that case. A copy of the Iowa district court's December 17, 2004 ruling is attached behind Tab A to Microsoft's Memorandum In Support of Its Application For Leave to Appeal the District Court's December 17, 2004 Ruling on Collateral Estoppel, filed herewith.

4.      The district court applied an erroneous legal standard and its ruling on collateral estoppel conflicts sharply with the decisions of other courts that have ruled on the same issue in identical circumstances applying the same law. *See In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 325 (4th Cir. 2004); *Gordon v. Microsoft Corp.*, No. MC 00-5994, 2003-2 Trade Cas. (CCH) ¶ 74,130, 2003 WL 22281574 (Minn. Dist. Ct. Aug. 20, 2003).

5.      Rule 6.2 of the Iowa Rules of Appellate Procedure states that this Court may grant an interlocutory appeal "on finding that such ruling or decision involves substantial rights and will materially affect the final decision and that a determination of its correctness before trial on the merits will better serve the interests of justice." Iowa R. App. P. 6.2(1).

6.      As set forth in Microsoft's Memorandum filed herewith, the district court's ruling satisfies the requirements of Iowa R. App. 6.2 because it involves Microsoft's substantial rights and will materially affect the final decision. Moreover, immediate appellate review before trial on the merits will better serve the interests of justice.

WHEREFORE, Microsoft respectfully seeks leave to appeal from the
district court's December 17, 2004 Ruling Granting Plaintiffs' Motion for Application of
Collateral Estoppel Against Microsoft.

Dated:  January 18, 2005

Respectfully submitted,

Charles B. Casper
MONTGOMERY, McCRACKEN,
    WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, Pennsylvania  19109
(215) 772-1500

Thomas W. Burt
Richard J. Wallis
Steven J. Aeschbacher
MICROSOFT CORPORATION
One Microsoft Way
Redmond, Washington  98052
(425) 936-8080

Edward W. Remsburg (PK0004619)
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309
(515) 243-7611

David B. Tulchin
Joseph E. Neuhaus
Richard C. Pepperman, II
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

*Attorneys for Microsoft Corporation*

-4-

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2005, I caused a copy of the foregoing

Application for Leave to Appeal the District Court's December 17, 2004 Ruling on

Collateral Estoppel to be delivered by mail to:

    Roxanne Barton Conlin
    Roxanne Conlin & Associates, P.C.
    600 Griffin Building
    319 Seventh Street
    Des Moines, Iowa 50309
    Phone: (515) 283-111
    Fax: (515) 282-0477

    Richard M. Hagstrom
    Zelle, Hofmann, Voelbel, Mason &
      Gette LLP
    500 Washington Avenue South
    Suite 400
    Minneapolis, Minnesota 55415
    Phone: (612) 339-2020
    Fax: (612) 336-9100

Edward W. Remsberg (PK0004419)

IN THE SUPREME COURT OF IOWA

**FILED**

FEB 0 8 2005

CLERK SUPREME COURT

JOE COMES and RILEY PAINT, INC.   :   No. CL82311
an Iowa corporation,

                Plaintiffs,   :

      v.   :

MICROSOFT CORPORATION,   :
a Washington corporation,

             Defendant.   :

---

**PLAINTIFFS' RESPONSE TO MICROSOFT'S APPLICATION FOR LEAVE TO APPEAL THE DISTRICT COURT'S DECEMBER 17, 2004 RULING ON COLLATERAL ESTOPPEL, AND PLAINTIFFS' CONDITIONAL REQUESTS FOR EXPEDITED REVIEW AND TO PERMIT PRETRIAL PROCEEDINGS TO CONTINUE**

Roxanne Barton Conlin
ROXANNE CONLIN & ASSOCIATES, P.C.
600 Griffin Building
319 Seventh Street
Des Moines, Iowa 50309
Phone: (515) 283-1111
Fax: (515) 282-0477

Richard M. Hagstrom
ZELLE, HOFMANN, VOELBEL, MASON &
GETTE LLP
500 Washington Avenue South
Suite 4000
Minneapolis, Minnesota 55415
Phone: (612) 339-2020
Fax: (612) 336-9100

**ATTORNEYS FOR PLAINTIFFS
AND ALL OTHERS SIMILARLY SITUATED**



PLAINTIFF'S
EXHIBIT
E

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

BACKGROUND ........................................................................................ 3

ARGUMENT ............................................................................................ 5

A.   JUDGE ROIS PROPERLY CONCLUDED THAT MICROSOFT WAS PRECLUDED FROM RELITIGATING THE 355 FINDINGS OF FACT ON WHICH THE MONOPOLIZATION JUDGMENT DEPENDED. .................................................. 6

   1.   As Microsoft Itself Conceded, The D.C. Circuit's Modification To The Judgment Affected The Preclusive Effect Of Very Few Findings Of Fact. ...................... 7

   2.   Microsoft's Citation To Out-Of-Context Dicta From The Remedies Decision Cannot Be Used To Limit The Scope Of Collateral Estoppel. ............................... 8

   3.   The Supposed Risk Of "Juror Confusion" Provides No Basis For Allowing Microsoft To Relitigate Issues That Were Already Decided In The Government Action. ........... 9

   4.   Judge Rois Correctly Applied The "Necessary And Essential" Standard. ........... 9

   5.   Judge Rois Correctly Declined To Follow The Minnesota District Court's Erroneous Ruling On Collateral Estoppel. ............................................ 11

B.   PLAINTIFFS DO NOT OPPOSE MICROSOFT'S REQUEST FOR IMMEDIATE REVIEW OF JUDGE ROIS' RULING, CONDITIONED ON THE COURT'S WILLINGNESS TO HEAR THE MATTER ON AN EXPEDITED BASIS. .................. 12

   1.   Judge Rois' Ruling Involved An Important Issue For Trial. ...................... 12

   2.   The Court Could Choose To Decide The Question On An Expedited Basis, And The Lawsuit Need Not Be Stayed Before The District Court. ......................... 14

   3.   The Court Can Facilitate An Expedited Resolution Of Microsoft's Appeal By Limiting The Scope Of Microsoft's Challenge To The District Court's Ruling. ........... 15

C.   IF THE COURT CANNOT HEAR THE APPEAL ON AN EXPEDITED BASIS, ADDITIONAL DELAYS RESULTING FROM A THIRD APPEAL IN THIS MATTER WILL SERIOUSLY PREJUDICE PLAINTIFFS. ........................................... 15

CONCLUSION ........................................................................................ 16

i

## TABLE OF AUTHORITIES

**Cases**

*Bickford v. American Interinsurance Exch.*, 224 N.W.2d 450 (Iowa 1974) ................. 10

*Casey v. Koos*, 323 N.W.2d 193 (Iowa 1982) ................. 5

*Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 71 S. Ct. 408, 95 L. Ed. 534 (1951) ................. 9

*Gardner v. Hartford Ins. Acc. & Indem. Co.*, 659 N.W.2d 198 (Iowa 2003) ................. 5

*Goolsby v. Derby*, 189 N.W.2d 909 (Iowa 1971) ................. 2

*Gordon v. Microsoft Corp.*, 2003 WL 22211574 (Minn. Dist. Ct. Aug. 20, 2003) ................. 6

*Hoult v. Hoult*, 157 F.3d 29 (1st Cir. 1998) ................. 10

*Hunter v. City of Des Moines*, 300 N.W.2d 121 (Iowa 1981) ................. 5, 10

*In re Marriage of Graziano*, 573 N.W.2d 598 (Iowa 1998) ................. 3, 15

*In Re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322 (4th Cir. 2004) ................. 10, 11, 15

*Iowa Supreme Court Bd. of Prof'l Ethics & Conduct v. D.J.I.*, 545 N.W.2d 866 (Iowa 1996) ................. 2, 13

*Iowa Supreme Court Bd. of Prof'l Ethics & Conduct v. Isaacson*, 565 N.W.2d 315 (Iowa 1997) ................. 2, 13

*Koos v. City of Cedar Rapids*, 300 N.W.2d (Iowa 1981) ................. 14

*Mason City Prod. Credit Ass'n. v. Van Duzer*, 376 N.W.2d 882 (Iowa 1985) ................. 16

*New York et al. v. Microsoft Corp.*, 224 F. Supp. 2d 76 (D.D.C. 2002) ................. 8

*River Excursions, Inc. v. City of Davenport*, 359 N.W.2d 475 (Iowa 1984) ................. 12, 16

*Sarci v. Iowa Dist. Ct. for Polk County*, 671 N.W.2d 482 (Iowa 2003) ................. 8, 11

*United States v. Microsoft Corp.*, 87 F. Supp. 2d 30 (D.D.C. 2000) ................. 2, 4

*United States v. Microsoft Corp.*, 253 F.3d (D.C. Cir. 2001) ................. passim

*United States v. Microsoft Corp.*, 84 F. Supp. 2d 9 (D.D.C. 1999) ................. passim

**Statutes**

Iowa Code § 533.17 ................. 2

Iowa R. App. P. 6.2 ................. 12

**Secondary Authorities**

Restatement (Second) Judgments § 27 ................. 10

12 Iowa Prac., Civil & Appellate Procedure § 42.08 (2004 ed.) ................. 14

i

**INTRODUCTION**

Microsoft concedes that the application of collateral estoppel, based on the final judgment in *United States v. Microsoft Corp.*, is proper. *Comes v. Microsoft Corp.*, No. CL82311 (Polk Co. Dist. Ct. Oct. 21, 2004), Tr. at 43:19-21 ("[W]e don't dispute that some collateral estoppel is appropriate under Iowa law. We've conceded that it is.") (attached hereto behind Tab A). Microsoft also concedes that the legal conclusions regarding Microsoft's adjudicated illegal conduct are subject to preclusion. *See, e.g., id.* at 52:2-9 ("And we agree that that conclusion [regarding Microsoft's monopoly power], that issue is subject to collateral estoppel. We lost on that issue in the Federal Courts in the government case."). Nevertheless, Microsoft asserts that it should be free to relitigate *at least* 396 (of 412) factual findings from the government case, even though it conceded elsewhere that 266 Findings of Fact were appropriately subject to preclusion. *See* Microsoft Calif. Br. at App. A (attached hereto behind Tab B).[1] Microsoft wishes to revisit subjects that were litigated and necessarily decided in the government action, such as (1) the nature of Microsoft's conduct on which the monopolization judgment was based, (2) whether that conduct had any anticompetitive effects, and (3) whether any procompetitive benefits might have justified that conduct, even though those were the *essential and fundamental* issues in determining whether Microsoft's conduct was exclusionary and therefore illegal.

In her December 17, 2004 ruling, Polk County District Court Judge Artis I. Reis correctly determined the appropriate scope of collateral estoppel. Of the 412 Findings of Fact from the government action, *United States v. Microsoft Corp.*, 84 F. Supp. 2d 9 (D.D.C. 1999),[2] Judge

---

[1] Appendix A to Microsoft's Memorandum Contesting 117 Out Of 303 Findings Of Fact For Which Plaintiffs Seek Offensive Nonmutual Collateral Estoppel lists the Findings of Fact that Microsoft conceded in the California indirect purchaser action satisfied the "necessary and essential" standard articulated by the district court there.

[2] Hereinafter "Findings of Fact."

1

Reis properly accorded preclusive effect to the 352 findings on which the monopolization judgment depended. These were the findings from which the federal district court concluded that the elements of the cause of action under the Iowa Competition Law were met. *See United States v. Microsoft Corp.*, 87 F. Supp. 2d 30, 54 (D.D.C. 2000).[3] Judge Reis did *not* give preclusive effect to any remaining findings that—while certainly material and relevant to the prior judgment—were the basis *only* for claims, or portions of claims, that were unsuccessful before the trial court or that were reversed by the United States Court of Appeals for the D.C. Circuit. The ruling faithfully followed this Court's guidance on collateral estoppel. *See Iowa Supreme Court Bd. of Prof'l Ethics & Conduct v. D.J.I.*, 545 N.W.2d 866, 875-76 (Iowa 1996).

Plaintiffs agree with Microsoft that Judge Reis' ruling involves a very important issue—namely, whether Microsoft will be permitted to collaterally attack the monopolization judgment in *United States v. Microsoft* by relitigating the Findings of Fact on which that judgment depended. By collaterally attacking the prior judgment, Microsoft undermines the central principle underlying collateral estoppel that a party "ought not to be permitted to litigate the same issue more than once." *Goolsby v. Derby*, 189 N.W.2d 909, 915 (Iowa 1971). Microsoft also seeks to deny Plaintiffs the benefit of a successful antitrust action brought by the State of Iowa, contrary to policy enshrined in the Iowa Competition Law. *See* Iowa Code § 553.17. In the absence of a ruling by this Court, Plaintiffs expect that Microsoft will proffer evidence before and during trial in a continued effort to challenge many of the findings underlying the judgment. *Cf. Iowa Supreme Court Bd. of Prof'l Ethics & Conduct v. Isaacson*, 565 N.W.2d 315, 316 (Iowa 1997). At a minimum, Microsoft's efforts will likely create serious delay and confusion in the record at trial.

---

[3] Hereinafter "Conclusions of Law."

Because a final determination by this Court on collateral estoppel could streamline trial considerably, Plaintiffs do not oppose Microsoft's request for leave to file an interlocutory appeal, conditioned on this Court's willingness to consider Microsoft's appeal under an accelerated briefing and hearing schedule.   The reason for Plaintiffs' conditional response: *additional delay benefits Microsoft*.   This lawsuit has already been pending for *five* years, and two appeals have already come before the Iowa Supreme Court in that time.   The first appeal lasted twenty-one months.   The second, which is still pending, has lasted nearly seventeen months.   Any further delays resulting from yet another appeal will seriously prejudice Iowa consumers.   *See In re Marriage of Graziano*, 573 N.W.2d 598, 599 (Iowa 1998) ("To allow parties to delay or interrupt the trial by appealing any [interlocutory] order as a matter of right would lead to obvious chaos and would accord a disastrous advantage to the party with more resources.").   Therefore, if the Court is unable or unwilling to resolve the substance of the appeal quickly, then the interests of justice do not favor granting Microsoft leave to file an interlocutory appeal.

## BACKGROUND

In May 1998, the United States Department of Justice and a coalition of state attorneys general—including Iowa's—filed related lawsuits against Microsoft alleging violations of state and federal antitrust laws.  Following a 76-day trial, the federal district court made 412 Findings of Fact after "consider[ing] the record evidence submitted by the parties, ma[king] determinations as to its relevancy and materiality, [and] assess[ing] the credibility of the testimony of the witnesses."  Findings of Fact, 84 F. Supp. 2d at 12.  These findings provided a coherent narrative account of Microsoft's exclusionary conduct, the effects of that behavior, and the lack of any procompetitive benefits resulting from Microsoft's actions.  *See generally id.* at 12-112.  In April 2000, "[u]pon consideration of the... Findings of Fact," the district court

3

concluded that Microsoft had violated federal and state antitrust laws, including the Iowa Competition Law. Conclusions of Law, 87 F. Supp. 2d at 35, 54.

On appeal, the United States Court of Appeals for the District of Columbia, in a *per curiam* decision, affirmed the district court's conclusion, with minor modifications, that Microsoft had illegally monopolized the market for Intel-compatible PC operating systems by means of exclusionary conduct. *United States v. Microsoft Corp.*, 253 F.3d 34, 46 (D.C. Cir. 2001).[4] In its decision, the Court of Appeals set forth a three-step analysis for identifying exclusionary conduct that violated the antitrust laws, as distinguished from vigorous competition on the merits. *Id.* at 58-59. That analysis requires a showing that the conduct had an "anticompetitive effect." It then allows the defendant to proffer any procompetitive justifications, and finally requires a balancing of anticompetitive effects with any non-pretextual procompetitive benefits.[5] *Id.* In light of that analysis, the Court of Appeals "carefully consider[ed] the voluminous record on appeal—including the District Court's Findings of Fact and Conclusions of Law." *Id.* at 46. Microsoft's illegal conduct, namely the acts for which the government made the requisite showings, and the district court made the requisite findings, is set

---

[4] The Court of Appeals noted that Microsoft "fail[ed] to challenge the District Court's key factual findings." *Microsoft*, 253 F.3d at 52. Nevertheless, following a "painstaking" review of the record, the Court of Appeals refused to overturn any of the district court's 412 Findings of Fact as clearly erroneous. *Id.* at 118.

The Court of Appeals reversed the district court's conclusion that Microsoft had illegally attempted to monopolize the web browser market on the basis that the government had failed to prove, and the district court failed to make the required detailed findings concerning the existence of a relevant market for web browsers—an essential element of an attempted monopolization claim. *Id.* at 80-84. The D.C. Circuit remanded the government's tying claim to the district court for consideration under a "rule of reason" standard, in contrast to the *per se* illegal standard that the district court had applied. *Id.* at 84. The Court of Appeals also made minor modifications to the affirmed monopolization ruling. Judge Reis' collateral estoppel ruling accounted for all of these modifications.

[5] Evidence of intent may assist in understanding the likely effect of the defendant's conduct. *Microsoft*, 253 F.3d at 59.

forth in Judge Reis' ruling.   *See Ruling on Plaintiffs' Motion for Application of Collateral Estoppel Against Microsoft ("Ruling") at 16-20.*[5]

Because the conduct litigated in *United States v. Microsoft* is a "subset" of Plaintiffs' lawsuit, Plaintiffs requested in July 2004 that the District Court preclude Microsoft from contesting (1) the legal determinations from the government action regarding Microsoft's unlawful monopolization of the market for Intel-compatible PC operating systems,[7] and (2) the 352 facts proving Microsoft's illegal monopolization.  Judge Reis granted Plaintiffs' motion.

## ARGUMENT

Under the doctrine of collateral estoppel a party may be precluded from relitigating legal or factual matters that were decided in an earlier judicial proceeding when (1) the issue from a prior proceeding is identical to an issue in the later action; (2) the issue was raised and litigated in the prior action; (3) the issue was material and relevant to the disposition of the earlier proceeding; and (4) the determination of the issue was necessary and essential to the resulting judgment.  *Gardner v. Hartford Ins. Acc. & Indem. Co.*, 659 N.W.2d 198, 202 (Iowa 2003) (doctrine applies to issues of law or fact); *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981).  A litigant may seek to invoke the doctrine offensively, even though not a party to the prior action, provided (1) the party to be precluded had a full and fair opportunity to litigate the issues in the first proceeding, and (2) precluding the party from relitigating those issues would not be unfair.  *Hunter*, 300 N.W.2d at 124-26.  A court has considerable discretion in applying collateral estoppel.  *Casey v. Koos*, 323 N.W.2d 193, 197 (Iowa 1982).

Microsoft made several important concessions in responding to Plaintiffs' motion:

---

[5] The Ruling is attached behind Tab A to Microsoft's Memorandum in Support of Application for Leave to Appeal the District Court's December 17, 2004 Ruling on Collateral Estoppel ("Microsoft Memo.").

[7] Microsoft does not contest the legal determinations from the government case that were adopted by Judge Reis.

- Microsoft did not dispute that the issues for which Plaintiffs sought preclusion were identical to issues in the present action. Ruling at 9;

- Microsoft did not dispute that the issues were raised, litigated and determined in the government action. *Id.*

- Microsoft did not seriously dispute that the issues were material and relevant in the prior action. *Id.* at 10.

- Microsoft explicitly conceded that it was provided a full and fair opportunity to litigate the issues that were the subject of the Plaintiffs' motion. *Comes*, Oct. 21, 2004, Tr. at 54:10-13 ("It's quite true. Microsoft had a full and fair opportunity to litigate; we don't dispute that.").

- Microsoft even conceded that application of collateral estoppel was proper in this case. *Id.* at 43:19-21.

Given these concessions, the *only* question for the District Court to decide was the *scope* of its collateral estoppel ruling.

A.   **JUDGE BEIS PROPERLY CONCLUDED THAT MICROSOFT WAS PRECLUDED FROM RELITIGATING THE 352 FINDINGS OF FACT ON WHICH THE MONOPOLIZATION JUDGMENT DEPENDED.**

In support of their motion, Plaintiffs provided Judge Beis with a detailed explanation as to how the monopolization judgment depended on the 352 findings at issue under the appropriate legal analysis for a monopolization claim. *See* Tab C.[8] During oral argument, Plaintiffs also explained—step-by-step—how modifications to the district court's judgment by the Court of Appeals affected the preclusive effect of certain findings, and how none of those findings were included in Plaintiffs' motion.

Microsoft argued that *at most* 16 of the 412 Findings of Fact were subject to preclusion. In support of its position, Microsoft relied heavily on the collateral estoppel ruling in *Gordon v. Microsoft Corp.*, 2003 WL 22281574 (Minn. Dist. Ct. Aug. 20, 2003), in which the Minnesota district court erroneously determined that only three Findings of Fact and a handful of

---

[8] Plaintiffs submitted Appendix A (attached hereto behind Tab C) in conjunction with their memorandum of law in support of Plaintiffs' Motion for Collateral Estoppel Against Microsoft Corporation.

fragmentary snippets from the Court of Appeals' opinion would be subject to preclusion, even though Microsoft had conceded there that 266 Findings of Fact were "necessary and essential" to the judgment.[9]  Microsoft raised three additional, unpersuasive arguments before the District Court.  First, Microsoft claimed that the D.C. Circuit's modification of the district court's judgment rendered the "vast majority" of findings "irrelevant."  Second, Microsoft asserted that the federal district court, on remand, characterized the "vast majority" of findings as "unconnected" to Microsoft's liability.  Third, Microsoft argued that presenting the jury with voluminous findings from the government action would be prejudicial to Microsoft.

Judge Reis properly rejected Microsoft's arguments and correctly adopted the "necessary and essential" standard, as articulated by this Court.  Moreover, Judge Reis appropriately declined to follow the Minnesota trial court's collateral estoppel order.

**I.    As Microsoft Itself Conceded, The D.C. Circuit's Modifications To The Judgment Affected The Preclusive Effect Of Very Few Findings Of Fact.**

Microsoft's hyperbolic rhetoric that the "vast majority" of factual findings were rendered unnecessary because the D.C. Circuit "drastically altered" the district court's liability conclusion, was belied by Microsoft's own positions before the District Court in Iowa and elsewhere.  For instance, while Microsoft pointed to (I) the government's lack of success on its Section 1 exclusive dealing claim, and (2) the reversal and remand of the government's tying claim, Microsoft *admitted* before the D.C. Circuit that "[t]he district court's monopoly maintenance ruling was based *almost entirely* on the same conduct that plaintiffs challenged as tying and

---

[9] Microsoft has requested leave to cite the *Gordon* court's collateral estoppel ruling should the Court grant leave for Microsoft to file an interlocutory appeal and is attached behind Tab B to Microsoft Memo. Plaintiffs do not oppose Microsoft's request.  In fact, Plaintiffs are more than willing to explain how the *Gordon* court confined several unrelated issues in reaching its collateral estoppel decision, and how that common decision opened the door at trial for Microsoft to relitigate findings on which the judgment in *United States v. Microsoft* depended.

exclusive dealing under Section 1."[30]  Furthermore, Microsoft specifically identified only *18 findings* (Findings of Fact ¶¶ 79-89, 149-155) that were supposedly affected by the D.C. Circuit's modification of the federal district court's judgment, and therefore Microsoft should be precluded from arguing that any additional findings were so affected.  *See Sarci v. Iowa Dist. Ct. for Polk County*, 671 N.W.2d 482, 489 (Iowa 2003).

2.   **Microsoft's Citation To Out-Of-Context Dicta From The Remedies Decision Cannot Be Used To Limit The Scope Of Collateral Estoppel.**

The question before the federal court in *New York v. Microsoft* was one of *remedies*, not of *liability*.  Judge Kollar-Kotelly noted that certain findings, "*standing alone* and unconnected to specific liability findings, cannot be used to justify specific remedial provisions." *New York et al. v. Microsoft Corp.*, 224 F. Supp. 2d 76, 138 (D.D.C. 2002) (emphasis added).  She was not expressing any opinion as to whether specific Findings of Fact were necessarily decided for purposes of collateral estoppel; rather, she was deciding whether, under an altogether different standard with its own set of policy concerns, particular remedies were appropriate.  In any event, while Microsoft claims that Judge Kollar-Kotelly's remarks rendered "the vast majority" of findings unnecessary, Microsoft identified only *four specific findings* (Findings of Fact ¶¶ 90-92, 155) that were supposedly affected by these statements, and therefore Microsoft should be precluded from arguing that any additional findings were so affected.  *See Sarci*, 671 N.W.2d at 489.

---

[30] The D.C. Circuit agreed with Microsoft's characterization of the government's claims, stating that "[t]he two practices that plaintiffs have most ardently claimed as tying violations are, indeed, a basis for liability under plaintiffs' § 2 monopoly maintenance claim." *Microsoft*, 253 F.3d at 96.

3.    The Supposed Risk Of "Juror Confusion" Provides No Basis For Allowing Microsoft To Relitigate Issues That Were Already Decided In The Government Action.

Microsoft's "juror confusion" and "prejudice" arguments conflated two separate questions: (1) the issues from *United States v. Microsoft* that Microsoft would not be permitted to relitigate; and (2) what the jury ultimately would be told about the issues decided in the government case. As to the latter question, a trial court has considerable discretion to inform the jury *fully* of issues that were determined in an earlier case. *See Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 571-72, 71 S. Ct. 408, 415, 95 L. Ed. 534 (1951) (trial court should "reconstruct the case in the manner and to the extent [it] deems necessary to acquaint the jury *fully* with the issues determined [in the prior action]," including "resorting to such portions of the record... [to give] a clear [contextual] picture of the issues decided there."). In any event, only the former question was before the District Court. Indeed, in the California action, Microsoft conceded this distinction:

> Microsoft understands that issues about the formatting and presentation of findings to the jury are not being briefed or decided at this juncture, but will be addressed after this Court has decided which findings are necessary to the legal conclusions it has adopted.

Microsoft Calif. Br. at 2 n.3 (attached hereto behind Tab E). Furthermore, in the Minnesota action, Microsoft acknowledged that any concerns about juror confusion could be cured with proper jury instructions.

4.    Judge Reis Correctly Applied The "Necessary And Essential" Standard.

Judge Reis carefully followed the principles underlying the doctrine of collateral estoppel—as articulated by this Court and in the Restatement (Second) Judgments—when considering whether to accord preclusive effect to Findings of Fact from the government action. As the District Court acknowledged, in order for preclusive effect to attach to an issue of law *or*

9

fact litigated and decided in a prior proceeding, the determination of the issue must be one upon which the judgment "rest[ed]." Ruling at 11 (citing *Hunter*, 300 N.W.2d at 123; *Bickford v. American Interinsurance Exch.*, 224 N.W.2d 450, 455 (Iowa 1974); Restatement (Second) Judgments § 27, comment h (preclusive effect given to issues on which judgment was dependent)).

While Microsoft suggested that collateral estoppel was only available when an issue, standing alone, would have been enough to render the judgment, the District Court correctly observed that the preclusive effect of a prior finding did not turn on

> whether or not other links in the chain had to be forged before the question of liability could be determined.... [Instead, t]he appropriate question... is whether *the issue was actually recognized by the parties as important and by the trier as necessary to the first judgment*. If so, the determination is conclusive between the parties....

*Id.* (citing Restatement (Second) Judgments § 27, comment j (emphasis added)). Accordingly, Judge Reis concluded: "A finding is 'necessary' if it was central to the route that led the factfinder to the judgment reached, even if the result could have been achieved by a different, shorter, and more efficient route." *Id.* (citing *Hoult v. Hoult*, 157 F.3d 29, 32 (1st Cir. 1998)). The District Court further determined:

> For each of the Findings of Fact, Plaintiffs demonstrated how the issue was *central to the analysis necessarily undertaken* by the [federal] district court in concluding that the elements of a monopolization claim had been satisfied.

*Id.* at 15 (emphasis added).

Although Microsoft contends that Judge Reis' application of the "necessary and essential" standard means that collateral estoppel effect "will be" given to findings as to which there was no opportunity for appellate review in the prior litigation, Microsoft Memo. at 18 (citing *In Re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 327 (4th Cir. 2004)), Microsoft has never identified any findings (here or before the District Court) for which it did not have the

opportunity for appellate review. Accordingly, Microsoft should be precluded from arguing that any findings were improperly accorded preclusive effect on that basis. *See Sorci*, 671 N.W.2d at 489.[11]

### 5. Judge Reis Correctly Declined To Follow The Minnesota District Court's Erroneous Ruling On Collateral Estoppel.

While Microsoft claims that the District Court did not address the trial court's decision in *Gordon*, Microsoft Memo. at 16-17, Judge Reis scrutinized and correctly rejected the approach adopted in Minnesota, and advocated by Microsoft in Iowa, that only a handful of issues were necessarily decided. That approach was belied by the analysis undertaken by the D.C. Circuit in reviewing the federal district court's judgment against Microsoft. While agreeing that Microsoft monopolized the operating systems market, the Court of Appeals held that the government plaintiffs had failed to prove—and the federal district court had failed to make sufficient *detailed findings* from which to conclude—that Microsoft *attempted* to monopolize the *web browser* market. As Judge Reis concluded:

> Based on the D.C. Circuit's analysis [of the unsuccessful attempted monopolization claim], the Court concludes that, had the district court similarly foregone such an analysis... and simply made [the 16 findings Microsoft contended were subject to preclusion], the monopolization claim would have been reversed..... [A] successful claim is premised on evidentiary facts which prove the elements of a cause of action, including the exclusionary conduct—the who, what, where, when, why, and how.

Ruling at 20-22.[12]

_____

[11] Microsoft, of course, ignores that it failed to challenge the federal district court's factual findings in the D.C. Circuit. *Microsoft*, 253 F.3d at 52.

[12] Microsoft wrongly asserts that Judge Reis' decision to give preclusive effect to 332 findings was "rejected" by the Fourth Circuit. In fact, the Fourth Circuit never expressed any opinion on which Findings of Fact, or how many, are subject to preclusion. The Fourth Circuit simply remanded the matter back to Judge Motz for consideration in light of the "necessary and essential" standard, as interpreted in that circuit. *Microsoft Antitrust Litig.*, 355 F.3d at 325. While Microsoft argues that the approach adopted by Judge Reis is similar to Judge Motz' "supportive of" standard that was rejected by the Fourth Circuit, Microsoft again is wrong. As Plaintiff noted (and Microsoft did not seriously dispute) *all* of the 412 Findings of Fact were relevant (*i.e.*, "supportive of" the judgment), and Judge Reis'

**B.    PLAINTIFFS DO NOT OPPOSE MICROSOFT'S REQUEST FOR IMMEDIATE REVIEW OF JUDGE REIS' RULING, CONDITIONED ON THE COURT'S WILLINGNESS TO DECIDE THE MATTER ON AN EXPEDITED BASIS.**

Rule 6.2 of the Iowa Rules of Appellate Procedure permits this Court to grant an immediate appeal on an interlocutory ruling "on findings that such ruling or decision involves substantial rights and will materially affect the final decision and that a determination of its correctness before trial on the merits will better serve the interests of justice." Iowa R. App. P. 6.2(1). The Rule further provides that "[t]he order granting [an interlocutory] appeal may be on terms advancing it for prompt submission." Iowa R. App. P. 6.2(2). The party seeking an interlocutory appeal has the heavy burden of showing that the likely benefit to be derived from early appellate review outweighs the likely detriment and therefore satisfies the requirement that the interests of justice be better served. *River Excursions, Inc. v. City of Davenport*, 359 N.W.2d 475, 478 (Iowa 1984).

**1.    Judge Reis' Ruling Involved An Important Issue For Trial.**

During oral argument, Microsoft carefully noted that—with a limited collateral estoppel order of the type it was advocating—it had no intention of challenging *all* of the Findings of Fact. *Comes*, Oct. 21, 2004, Tr. at 62:14-15 ("We're not going to go back and relitigate every single evidentiary detail in these findings."). Microsoft never stated, however, that it would not challenge some—or even *many*—of those findings at trial. Indeed, Microsoft's assertion that Judge Reis' collateral estoppel ruling "will *greatly* alter the conduct of the trial of this action," and that Microsoft "will presumably be unable to present evidence with respect to a *vast number of purported facts,*" see Microsoft Memo. at 13 (emphasis added), is an admission that Microsoft would relitigate a significant number of findings. Moreover, the experience in Minnesota

---

collateral estoppel ruling did not include any findings that were "merely 'relevant'" (i.e., that did not directly relate to a material element of the monopolization claim).

12

demonstrates that Microsoft can be expected to collaterally attack the outcome in *United States v. Microsoft* whenever possible. *See Comes*, Oct. 21, 2004, Tr. at 16:22-18:7.

The Iowa Supreme Court is familiar with the disruption that can be caused by efforts like Microsoft's to escape the preclusive effects of a prior judgment. The Court dealt with precisely such a scenario in *D.J.I.*, 545 N.W.2d 866. In that matter, an attorney who was subject to a disciplinary proceeding based on unethical dealings with his clients sought to relitigate whether he had violated various provisions of the Iowa Code of Professional Responsibility, even though that question had been decided in an earlier civil fraud action. Like Microsoft here, the attorney argued that the findings were not "necessary and essential" to the prior judgment. This Court disagreed, observing that proof of an essential element, scienter, of the fraud claim had been based on the attorney's violations of the code of professional responsibility. *D.J.I.*, 545 N.W.2d at 875-76. The findings were binding. *Id.* at 876.

Nevertheless, in order to collaterally attack that determination on remand, the attorney sought to relitigate facts on which the determination that he had violated the disciplinary rules was based. Despite this Court's collateral estoppel ruling, the attorney offered evidence that contradicted findings made by the district court in the fraud case. *Iowecom*, 565 N.W.2d at 316. That effort worked. In reviewing the proffered evidence, the ethics commission expressed doubt as to whether it would have reached the same conclusions as the prior tribunal, and consequently imposed a very lenient penalty on the attorney. *Id.* at 315-16. In a subsequent appeal, however, the Court again reiterated that the attorney's dealings with his clients—as determined in the fraud action—were established for purposes of the disciplinary proceeding, and imposed a penalty based on the attorney's dealings with his clients *as determined in the prior proceeding*. *Id.* at 317.

13

Given Microsoft's *current* position that it should be free to challenge at least 396 Findings of Fact, Plaintiffs expect that—in the absence of a ruling by this Court affirming Judge Reis' decision—Microsoft will proffer evidence before and during trial to challenge many findings from the government case. Because of the enormity of the record in the prior action, Microsoft's proffers of evidence are likely to create serious delay and confusion in the record before the District Court. As in *D.H.* and *Imerson*, such an effort could be enough to affect the outcome of the case, and thus require post-judgment appeal and possible retrial. Therefore, Plaintiffs believe that final resolution of the collateral estoppel issue now is an important matter.

2. **The Court Could Choose To Decide The Question On An Expedited Basis, And The Lawsuit Need Not Be Stayed Before The District Court.**

If the Court permits an expedited appeal, the parties should have no difficulty meeting any shortened deadlines, since they already have briefed the legal and factual issues extensively before the District Court, and they are familiar with the arguments raised by their opponents. Indeed, as to the general standard for collateral estoppel and the meaning of the "necessary and essential" language used by this Court, there is no reason the parties could not simply stand on their briefing and oral arguments before the District Court.

While any appeal is pending, the Court can—and should—permit pretrial proceedings to continue in the District Court. An order granting permission for an interlocutory appeal does not necessarily preempt the district court's jurisdiction. *Kens v. City of Cedar Rapids*, 300 N.W.2d 153, 156 (Iowa 1981); *see also* Barry A. Lindahl, 12 Iowa Prac., Civil & Appellate Procedure § 42.08 (2004 ed.). To the extent the parties can continue preparing for trial by proceeding with "collateral" matters, any impact of an appeal on the trial date can be minimized.

3.      The Court Can Facilitate An Expedited Resolution Of Microsoft's Appeal By
        Limiting The Scope Of Microsoft's Challenge To The District Court's
        Ruling.

In another appeal of a collateral estoppel ruling, the Fourth Circuit simply remanded the matter for reconsideration under the "necessary and essential" standard, providing little guidance as to what that might mean.  *See Microsoft Antitrust Litig.*, 355 F.3d at 329 (Gregory, J., concurring in part, dissenting in part).  Because the appellate court expressed no views on which Findings of Fact satisfied that standard, it is entirely possible, had the matter not settled, that Judge Metz could have decided the same issues were subject to preclusion, thereby leading to yet another request for interlocutory review by Microsoft.  Plaintiffs wish to avoid such an outcome here.

As noted above, Microsoft raised several "kitchen sink" arguments about why the "vast majority" of Findings of Fact were not necessarily decided.  However, when arguing specifics about the actual issues involved in Plaintiffs' motion, Microsoft applied those arguments to relatively few findings.  Therefore Plaintiffs respectfully suggest that, if this Court hears Microsoft's appeal, it should require Microsoft to identify the specific Findings of Fact for which it contends Judge Rein abused her discretion in applying collateral estoppel and then provide the specific reasons Microsoft asserts collateral estoppel does not apply to these findings.  Unless Microsoft is required to use any opportunity for interlocutory review to clarify specific issues on collateral estoppel rather than further confuse them, an immediate appeal is not likely to advance the interests of justice.

C.      IF THE COURT CANNOT HEAR THE APPEAL ON AN EXPEDITED BASIS,
        ADDITIONAL DELAYS RESULTING FROM A THIRD APPEAL IN THIS
        MATTER WILL SERIOUSLY PREJUDICE PLAINTIFFS.

As the Court has noted, the delays resulting from interlocutory appeals can give "a disastrous advantage to the party with more resources"—in this case, Microsoft.  *See In re*

15

*Marriage of Graziano*, 573 N.W.2d at 599. Because of the two prior appeals that have already been heard, this lawsuit has been pending for almost exactly five years now. With the passage of time, memories fade, witnesses move on and become unavailable. Furthermore, Microsoft has successfully opposed any additional discovery—even though Plaintiffs' claims allege continuing anticompetitive conduct by Microsoft and even though "coordinated" discovery with other states (in which Plaintiffs had *no opportunity to participate*) ended in July 2002. The longer Microsoft can postpone trial, the more it will likely seek to disparage Plaintiffs' claims as "ancient history" with no impact on recent purchasers who are members of the certified classes. Accordingly, further delay from another appeal, on a non-expedited basis, would seriously prejudice Iowa consumers, and the interests of justice would no longer favor this Court taking the question on an interlocutory basis. *River Excursions*, 359 N.W.2d at 478 ("allowance of an interlocutory appeal is likely to increase the cost of litigation and delay the entry of a final judgment"); *Mason City Prod. Credit Ass'n v. Van Duzer*, 376 N.W.2d 882, 886-87 (Iowa 1985) (denying an interlocutory appeal and holding that piecemeal appeals often contribute little more than additional expense and delay).

## CONCLUSION

Microsoft's real quarrel with Judge Rois' December 17, 2004 ruling is that it accords preclusive effect to those factual findings on which the judgment in the government action depended—a result that forecloses any avenue for Microsoft to collaterally attack the adverse monopolization ruling. While Judge Rois' ruling was correct, Plaintiffs conditionally do not oppose Microsoft's request, for the reasons set forth above, provided that the review of Judge Rois' ruling be on an expedited basis, without any stay of proceedings in the interim.

**DATED: February 8, 2005**

Respectfully submitted,
BRANSTAD CUNLIFF & ASSOCIATES, P.C.

Roxanne Barton Conlin
600 Griffin Building
319 Seventh Street
Des Moines, Iowa 50309
Phone: (515) 282-3329
Fax: (515) 282-0318
ZELLE, HOFMANN, VOELBEL, MASON &
GETTE LLP
Richard M. Hagstrom
500 Washington Avenue South
Suite 4000
Minneapolis, Minnesota 55415
Phone: (612) 339-2020
Fax: (612) 336-9100

Copy to:

Edward Remsburg
Ahlers & Cooney, P.C.
100 Court Avenue
Suite 600
Des Moines, IA 50309

David B. Tulchin
Joseph E. Neuhaus
Sullivan & Cromwell
125 Broad Street
New York, New York 10004
Attorneys for Defendant

**PROOF OF SERVICE AND CERTIFICATE OF FILING**

I certify that on February 8, I served this document by a copy to all other parties in this matter at their respective addresses shown below:

David B. Tulchin
Joseph E. Neuhaus
Sullivan & Cromwell
125 Broad Street
New York, New York 10004

Edward Remsburg
Ahlers & Cooney, P.C.
100 Court Avenue
Suite 600
Des Moines, Iowa 50309

I further certify that on February 8, 2005, I filed this document with the Clerk of the Supreme Court, State Capitol, Des Moines, Iowa 50319.

<br>

Roxanne Barton Conlin
Roxanne Conlin & Associates, P.C.
The Griffin Building
319 Seventh Street, Suite 600
Des Moines, Iowa 50309
Phone: (515) 283-1111
Fax: (515) 282-0477

Richard M. Hagstrom
33 South Sixth Street
Suite 4400
Minneapolis, MN 55402
Phone: 612-339-2020
Fax: 612-336-9100

18

IN THE SUPREME COURT OF IOWA

No. 05-0867

Polk County No. CL 82311

ORDER

**FILED**
**AUG 2 6 2005**
CLERK SUPREME COURT

JOE COMES and RILEY
PAINT, INC., an Iowa Corporation,
    Plaintiffs-Appellees,

vs.

MICROSOFT CORPORATION,
a Washington Corporation,
    Defendant-Appellant.

---

This matter comes before the court upon the parties' joint motion for placement of this case on the court's October oral argument calendar. Upon consideration, the motion is denied. The case will be submitted during the week of December 5, 2005. The parties will be notified of the date and time for submission approximately one month in advance.

Dated this ___ day of August, 2005.

_____
Justice, Supreme Court of Iowa

Copies to:

Edward Remsburg
100 Court Avenue
Suite 600
Des Moines, Ia 50309-2231

Charles Casper
Montgomery, Mccracken, Walker
123 South Broad Street
Philadelphia, Pa 19109



Thomas Burt
Microsoft Corporation
One Microsoft Way
Redmond, Wa 98052

David Tulchin
Sullivan & Cromwell
125 Broad Street
New York, Ny 10004

Roxanne Conlin
319 Seventh Street
Suite 600
Des Moines, Ia 50309

Richard Hagstrom
Zelle, Hofmann, Voelbel, Mason & Gette
500 Washington Avenue, Suite 4000
Minneapolis, Mn 55415

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | | |
|---|---|---|
| JOE COMES, and RILEY PAINT, INC.,<br>an Iowa corporation,<br><br>      Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION,<br>a Washington corporation,<br><br>      Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | No. CV-05-562<br><br><br><br>LR 81.1(a)(2) LIST OF PENDING<br>MATTERS |

Pursuant to LR 81.1(a)(2), Microsoft submits the following list of all matters pending in the state court that may require resolution by this Court:

1.      Plaintiffs' Motion to Amend Petition, filed September 16, 2005, and

2.      Microsoft's request for the court to enter an order requiring Microsoft to produce to Plaintiffs all of the Oracle documents.  See attached.

Microsoft is filing a motion for an extension of time to file a response to the motion to amend until 20 days after the Judicial Panel on Multidistrict Litigation has determined whether this case should be transferred to the United States District Court for the District of Maryland, pursuant to 28 U.S.C. § 1407.  Microsoft is also filing a motion to stay other proceedings pending the transfer decision.

/s/ Edward W. Remsburg
Edward W. Remsburg (PK0004619)
Ahlers & Cooney, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309
Telephone : (515) 243-7611
Fax: (515) 243-2149
ATTORNEY FOR DEFENDANT

Copies mailed to:

Roxanne Barton Conlin,
Roxanne Conlin & Associates, P.C.,
Suite 600, 319 7th Street,
Des Moines, Iowa 50309

Richard M. Hagstrom
Zelle, Hofmann, Voelbel, Mason & Gette
500 Washington Avenue South, Suite 4000
Minneapolis, Minnesota 55415-1152

PROOF OF SERVICE

THE UNDERSIGNED CERTIFIES THAT THE FOREGOING
INSTRUMENT WAS SERVED UPON ALL PARTIES TO THE
ABOVE CAUSE TO EACH OF THE ATTORNEYS OF
RECORD HEREIN AT THEIR RESPECTIVE ADDRESSES
DISCLOSED ON THE PLEADINGS ON

October 13, 2005

BY __x_ U.S. MAIL              ___ FAX
     ___ HAND DELIVERED   ___ PRIVATE CARRIER

SIGNATURE /s/ Ann Reier

JV\ABKTS97\00000.IWP2127\0001

-2-